**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1585

GENERAL INSURANCE COMPANY OF AMERICA,

   Plaintiff,

THE WALTER E. CAMPBELL COMPANY, INC.

   Defendant and Third Party Plaintiff – Appellant,

v.

UNITED STATES FIRE INSURANCE COMPANY; ST. PAUL FIRE &
MARINE INSURANCE COMPANY,

   Defendants – Appellees,

and

NATIONAL INDEMNITY COMPANY; FEDERAL INSURANCE COMPANY;
CRUM & FORSTER CORPORATION; PENNSYLVANIA
MANUFACTURERS ASSOCIATION INSURANCE COMPANY; THE
CONTINENTAL INSURANCE COMPANY,

   Defendants,

THE HARTFORD FINANCIAL SERVICES GROUP, INC.,

   Defendant and Third Party Plaintiff,

THE TRAVELERS INDEMNITY COMPANY; PROPERTY & CASUALTY
INSURANCE GUARANTY CORPORATION,

   Defendant and Third Party Defendant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:12-cv-03307-WMN)

---

Argued: January 23, 2018                     Decided: March 26, 2018

Amended: March 28, 2018

---

Before WILKINSON, AGEE, and WYNN, Circuit Judges.

---

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

---

**ARGUED:** Bryan Michael Killian, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellant. Harry Lee, STEPTOE & JOHNSON LLP, Washington, D.C., for Appellees. **ON BRIEF:** Jeffrey S. Raskin, San Francisco, California, William B. Nes, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellant. Catherine Cockerham, STEPTOE & JOHNSON LLP, Washington, D.C., for Appellee St. Paul Fire and Marine Insurance Company. William P. Shelley, Jacob C. Cohn, GORDON & REES SCULLY MANSUKHANI LLP, Philadelphia, Pennsylvania, for Appellee United States Fire Insurance Company.

---

WYNN, Circuit Judge:

This insurance coverage dispute involves the applicability of two insurers' policies to past, pending, and future asbestos-related bodily injury claims against the Walter E. Campbell Company ("WECCO"), the insured. WECCO appeals several rulings by the U.S. District Court for the District of Maryland against WECCO and in favor of United States Fire Insurance Company ("U.S. Fire") and St. Paul Fire & Marine Insurance Company ("St. Paul," and collectively with U.S. Fire, the "Insurers").

The main questions at issue in this appeal—concerning both the scope and limit of the Insurers' duties to defend and indemnify WECCO—were answered over a decade ago by this Court in *In re Wallace & Gale Co.*, 385 F.3d 820, 833–34 (4th Cir. 2004). Unsatisfied with our precedent and the effect it would have on its cause of action, WECCO asks us to either consider these questions anew or certify them to the Maryland Court of Appeals. For reasons stated below, we decline to do either.

I.

A.

For decades, WECCO—a now-defunct Maryland corporation—handled, sold, installed, disturbed, and removed insulation materials containing asbestos. By 1972, WECCO ceased the sale and use of asbestos-containing products in its operations.

Since the mid-1980s, numerous individuals have sued WECCO alleging asbestos-related bodily injury stemming from WECCO's operations. From at least 1960 and through 1985, WECCO purchased and maintained comprehensive general liability

3

insurance policies from several insurers, including St. Paul and U.S. Fire. Pursuant to those policies, St. Paul, U.S. Fire, and other insurers defended and indemnified WECCO against hundreds of asbestos-related bodily injury claims, paying claimants more than $60 million on WECCO's behalf over several decades. However, though many claims against WECCO remain pending, the Insurers now contend that, based on the aggregate liability limits set forth in their policies with WECCO, they no longer are contractually obligated to defend and indemnify WECCO against such claims.

The policies WECCO entered into with the Insurers are, for purposes of this appeal, nearly identical with respect to the type of coverage provided. Generally speaking, the policies differentiate between (1) claims involving bodily injuries that fall within the policies' "completed operations hazard" and "products hazard" and (2) claims involving bodily injuries that fall outside those hazards—often referred to as "operations" claims.

Both WECCO and the Insurers rely on one particular policy, issued by U.S. Fire, as an exemplar for the typical language contained in each policy. This policy, like the others, first provides that it "applies only to bodily injury . . . *which occurs during the policy period.*" J.A. 938 (emphasis added). The policy further provides that:

> [t]he Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, . . . arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises . . . , *but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted* by payment of judgments or settlements.

4

*Id.* at 941 (emphasis added). Not all claims are subject to the same "applicable limit," however. In particular, the policy imposes an aggregate limit on the insurer's obligation to indemnify WECCO for claims that fall within the completed-operations and products hazards. The "completed operations" hazard is defined, in relevant part, to include:

> bodily injury . . . arising out of operations . . . , *but only if the bodily injury . . . occurs after such operations have been completed or abandoned* and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith.

*Id.* at 947 (emphasis added). And the "products hazard" is defined, in relevant part, to include:

> bodily injury . . . arising out of the named insured's products . . . , but only if the bodily injury . . . occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

*Id.* With respect to these two hazards, the policy provides that "the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed" the aggregate limit set forth in the policy. *Id.* at 948.

Accordingly, claims involving bodily injuries that fall under the completed-operations and products hazards are subject to an aggregate limit. Every dollar the insurer pays out to indemnify WECCO against such claims counts against the policy's aggregate limit. Once the aggregate limit is reached, the insurer is no longer obligated to defend and indemnify WECCO for completed-operations and products hazard claims. On the other hand, operations claims—that is, bodily injury claims that do not constitute

5

completed-operations or products hazards—are subject only to a "per occurrence" limit, meaning that there is no aggregate limit on the insurer's obligation to defend and indemnify WECCO against operations claims.

WECCO and the Insurers disagree as to how to properly classify past, pending, and future bodily injury claims against WECCO. Specifically, WECCO contends that the Insurers have mischaracterized settled operations claims as settled completed-operations claims, resulting in a premature exhaustion of the policies' aggregate limits for completed-operations claims. Additionally, WECCO and the Insurers disagree over the manner in which coverage liability should be allocated among WECCO and the multiple insurance policies triggered by an asbestos-related bodily injury.[1]

In 2003, the Insurers notified WECCO that the aggregate limits contained in the primary policies issued to WECCO had exhausted and that, as a result, the Insurers were no longer obligated to defend or indemnify WECCO under these policies. However, the Insurers continued to defend and indemnify WECCO under their umbrella/excess policies until U.S. Fire stopped in January 2009—after notifying WECCO that it had fully

---

[1] WECCO and the Insurers agree that under Maryland law, "asbestos-related injury begins with exposure, carries forward while the asbestos fibers are in residence and continues through to manifestation of the disease." *In re Wallace & Gale Co.*, 385 F.3d at 828 (quoting *In re Wallace & Gale Co.*, 275 B.R. 223, 238 (D. Md. 2002), *modified in part on other grounds*, 284 B.R. 557 (D. Md. 2002)). In other words, exposure to asbestos can cause a continuing, long-lasting "injury" that begins with the exposure and generally ends with the manifestation of an asbestos-related disease. *See Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1038 n.3 (D.C. Cir. 1981). Accordingly, an asbestos-related bodily injury may—and almost always does—span and trigger coverage across multiple insurance policies.

6

exhausted the aggregate limits contained in its umbrella/excess policies—and St. Paul stopped in June 2013—after doing the same.

Despite receiving these notices, WECCO never challenged the Insurers' assertion that their policies' aggregate limits were exhausted until the instant action.

B.

In November 2012, one of WECCO's insurers, General Insurance Company of America ("General Insurance"), brought a declaratory judgment action in the U.S. District Court for the District of Maryland against WECCO and several of WECCO's other insurers, including St. Paul and U.S. Fire. General Insurance asserted that (1) all the claims it had settled on behalf of WECCO fell under its policies' completed-operations hazards; (2) the hazards' aggregate limits had been exhausted; and (3) WECCO's other insurers were not paying their *pro rata* share of the liabilities arising from the asbestos claims against WECCO. Accordingly, General Insurance sought, *inter alia*, a judicial declaration stating that it had fulfilled all of its obligations to WECCO and thus was no longer liable to defend or indemnify WECCO for any pending or future bodily injury claims. The insurer-defendants, including St. Paul and U.S. Fire, filed answers to General Insurance's complaint; many also asserted counterclaims and cross-claims with the intent of absolving themselves of any further obligation to indemnify WECCO for asbestos-related bodily injury claims.

WECCO responded to General Insurance's suit by filing a parallel action in the Superior Court of the District of Columbia, alleging that District of Columbia law, not Maryland law, applied to the coverage disputes. WECCO admits that it initiated the

7

District of Columbia action solely as an attempt to avoid the district court's application of this Court's decision in *In re Wallace & Gale*, 385 F.3d 820 (4th Cir. 2004). In *Wallace & Gale*, this Court held that, under Maryland law, the completed-operations hazard found in policies similar to the ones at issue here encompass any bodily injury claim in which the claimant was injured by asbestos exposure attributable to an operation that the insured completed prior to the start of the policy period. 385 F.3d at 833–34. WECCO's District of Columbia action was subsequently removed to federal court, remanded back to state court, removed again, remanded again, and finally stayed by the state court during the pendency of this action.

After its state-court action was stayed, WECCO filed a counterclaim in these proceedings against General Insurance and asserted cross-claims against the other insurers, including St. Paul and U.S. Fire. WECCO subsequently settled with all of its insurers except St. Paul and U.S. Fire. Accordingly, the only remaining parties to the instant action—and this appeal, in particular—are St. Paul, U.S. Fire, and WECCO.

The current dispute concerns several primary and umbrella/excess comprehensive general liability coverage policies issued by the Insurers to WECCO between May 1, 1975, and April 1, 1983. During the proceedings below, WECCO and the Insurers sought several judicial declarations related to the proper interpretation of the policies. WECCO also brought a breach-of-contract action against the Insurers, alleging that they "improperly allocated settled operations claims as settled completed operations claims, and subjected those claims improperly to the aggregate limit of liability in their policies," which caused the policies' aggregate limits of liability to exhaust prematurely. J.A.

8

1232–33. Extensive discovery ensued. Following the conclusion of discovery, the district court issued three separate orders granting partial summary judgment in favor of the Insurers, including several declarations relevant to this appeal.

First, in a May 2015 Memorandum and Order, the district court declared that Maryland law governed the interpretation of the insurance policies issued to WECCO by the Insurers. *Gen. Ins. Co. of Am. v. Walter E. Campbell Co.*, 107 F. Supp. 3d 466, 473–78 (D. Md. 2015). Next, relying on *Wallace & Gale*, the district court declared that, under Maryland law, "[b]odily injury that occurs during an insurer's policy period, *and that arises from an operation that concluded prior to the inception of the policy period*, falls within the 'completed operations hazard' of that policy and therefore is subject to the aggregate limits of each such policy." *Id.* at 473 (emphasis added). The practical effect of this ruling was that bodily injury claims brought by individuals first exposed to asbestos during WECCO operations that concluded prior to a policy's effective date were deemed completed-operations claims under that policy. Additionally, the district court declared that, "[t]o avoid the application of the aggregate limit of any particular policy, WECCO bears the burden of proving that the bodily injury that occurred during that policy's policy period arose from asbestos exposure during a WECCO operation that was ongoing during such policy period." *Id.*

One year later, in a May 2016 Memorandum and Order, the district court once again relied on *Wallace & Gale* in declaring that

> [a]ny indemnity obligation an insurer may have to WECCO with respect to an asbestos bodily injury suit is to be allocated pro rata based on such insurer's triggered time on the risk as compared to the "Allocation Period,"

9

which is the entire period during which the claimant's bodily injury occurred. The Allocation Period starts with the date of a claimant's first WECCO-related exposure to asbestos and ends with the manifestation of the claimant's asbestos-related disease, exclusive of any periods for which WECCO establishes that insurance for asbestos claims was commercially unavailable to WECCO for procurement.

*Gen. Ins. Co. of Am. v. Walter E. Campbell Co.*, No. WMN-12-3307, 2016 WL 2756524, at *5 n.5 (D. Md. May 12, 2016); *see also id.* at *6 (granting Insurers' requested declarations). In so doing, the district court rejected WECCO's argument that, under the language in the governing policies, each insurer was independently obligated to indemnify WECCO for "all sums"—up to any applicable policy limit—WECCO was liable to pay because of bodily injury that occurred during a policy period. In addition, the district court declared that WECCO—not the Insurers—was liable for "all pro rata shares of any judgment or settlement not allocable" to the Insurers, including, among other things, "indemnity allocable to any period in the Allocation Period for which . . . the insurance procured by WECCO was issued by one or more insurers that are insolvent." *Id.* at *5 n.6.

Finally, in March 2017, the district court granted summary judgment to the Insurers. *Gen. Ins. Co. of Am. v. Walter E. Campbell Co.*, 241 F. Supp. 3d 578, 599 (D. Md. 2017). In so doing, the district court resolved several dispositive issues relevant to this appeal. First, the district court declared that St. Paul's indemnity payments for several claims alleged by WECCO to be mischaracterized were in fact properly characterized as completed-operations claims and thus subject to the aggregate liability limits for such claims. *Id.* at 586–87. In rendering this declaration, the district court

relied on its finding, based on the "undisputed" evidence, that WECCO had ceased all asbestos-related operations by 1972—years before any of St. Paul's policies issued. *Id.* Second, the district court declared that the aggregate limits of St. Paul's policies had been exhausted by the payments of those claims. *Id.* at 589. Third, and in the alternative, the district court determined that the applicable three-year statute of limitations barred almost all of WECCO's breach-of-contract claims against the Insurers. *Id.* at 591–93.

The district court entered a final judgment order on April 5, 2017. WECCO timely appealed.

## II.

We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party. *Bryan Bros. Inc. v. Cont'l Cas. Co.*, 660 F.3d 827, 830 (4th Cir. 2011). "Because jurisdiction here was founded on diversity of citizenship, we apply the same substantive law that a court in Maryland, the forum state, would apply if it were deciding this case." *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 111 (4th Cir. 2012); *see also Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) ("In insurance contract disputes, Maryland follows the principle of *lex loci contractus*, which applies the law of the jurisdiction where the contract was made."). On appeal, the parties agree that Maryland substantive law governs.

WECCO contends that the district court erred when it (A) interpreted the completed-operations hazard to apply to bodily injury stemming from an individual's

11

exposure to asbestos during a WECCO operation that was completed at the time the insurance policy took effect, regardless of whether such operation was ongoing when the individual was first exposed; (B) placed the burden on WECCO to prove that an asbestos-related bodily injury claim is not subject to a policy's aggregate limit; (C) determined that St. Paul properly classified certain claims as "completed operations" claims; (D) declared that the aggregate limits of St. Paul's policies had been exhausted; and (E) concluded, in the alternative, that most of WECCO's breach-of-contract claims were time-barred.[2] We affirm the district court's judgment in its entirety, addressing each of WECCO's contentions in turn.[3]

## A.

WECCO's primary argument on appeal is that the district court erred in declaring that bodily injury that occurs during an insurer's policy period but arises out of a WECCO operation that concluded prior to the start of that policy period falls within the policy's completed-operations hazard and thus is subject to the policy's completed-operations hazard's aggregate limit. In WECCO's view, if a claimant was initially injured by asbestos exposure arising out of a WECCO operation, the claim is properly

---

[2] WECCO does not appeal the district court's pro rata allocation of the Insurers' obligations to indemnify WECCO for asbestos-related bodily injury claims. It asks only that we certify this issue to the Maryland Court of Appeals.

[3] We also deny WECCO's motion to certify questions raised in its appeal to the Maryland Court of Appeals, as our prior opinions interpreting Maryland law unambiguously resolve these questions. *Cf. Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 540 n.2 (4th Cir. 2014).

classified as an operations claim, regardless of whether the operation was ongoing or completed at the time of the policy's inception. Put differently, WECCO argues that the completed-operations hazard applies only in situations in which the starting point of a claimant's bodily injury occurred after WECCO operations completed. We disagree.

Boiled down to its core, WECCO's argument amounts to an attempt to re-litigate this Court's holding in *Wallace & Gale*. There, this Court applied Maryland law and interpreted the terms of various insurance policies issued to the Wallace & Gale Company—a company that, like WECCO, for decades supplied and installed asbestos-containing insulation materials. 385 F.3d at 823–25. And, like WECCO, the plaintiffs in *Wallace & Gale* argued that, under the policies' terms, any claims due to asbestos-related bodily injuries that first arose during Wallace & Gale operations were properly classified as operations claims—regardless of whether Wallace & Gale had completed operations before the policies were issued. Therefore, such claims were not subject to aggregate limits. *Id.* at 825. By contrast, the insurer-defendants argued that, if a policy took effect only after a bodily injury-causing operation was completed, then a claim brought under that policy due to the completed operation should be treated as a completed-operations claim, subject to that policy's aggregate limit. *Id.* at 825–26. The district court in *Wallace & Gale* agreed with the insurer-defendants' interpretation of the policies, holding as follows:

> If a claimant's initial exposure occurred while Wallace & Gale was still conducting operations, policies in effect at that time will not be subject to any aggregate limit. *If, however, initial exposure is shown to have occurred after operations were concluded or if exposure that began during operations continued after operations were complete, then the aggregate*

13

*limits of any policy that came into effect after operations were complete will apply*. Where a given claimant falls within this framework will have to be considered on a case-by-case basis.

*Id.* at 826 (emphasis added) (quoting *In re Wallace & Gale Co.*, 275 B.R. 223, 241 (D. Md. 2002), *modified in part on other grounds*, 284 B.R. 557 (D. Md. 2002)).

On appeal, we affirmed the district court's judgment. In so doing, we quoted in its entirety the district court's conclusion as to the proper classification of claims, and stated that as a result of this holding, "the insurers who issued general liability policies to Wallace & Gale for time periods *wholly after* Wallace & Gale completed its asbestos installation work will only be liable to the extent of the aggregate limit contained in the policy." *Id.* (emphasis added).

WECCO concedes that the definition of a "completed operations" claim in its policies with the Insurers is substantively indistinguishable from the definition of that term in *Wallace & Gale*. Accordingly, under *Wallace & Gale*, "the insurers who issued general liability policies to [WECCO] for time periods *wholly after* [WECCO] completed its asbestos installation work"—like the policies issued by the Insurers to WECCO—"will only be liable to the extent of the aggregate limit contained in the policy." *Id.*

WECCO nonetheless argues that we should not treat *Wallace & Gale* as controlling because the opinion's analysis "isn't so clear." Appellant's Br. 25. But WECCO's assertion that *Wallace & Gale*'s analysis lacks sufficient clarity to control this case runs contrary to WECCO's strategy throughout this litigation, which has been to seek to move these proceedings to other jurisdictions so as "to avoid *Wallace & Gale*." *Id.* So, although WECCO may not believe the analysis in *Wallace & Gale* is "clear," it

14

surely recognized that *Wallace & Gale*'s holding as to what claims fall within the completed-operations hazards of the Insurers' policies was sufficiently clear to guide WECCO's litigation strategy in these proceedings. In any event, we have little difficulty determining that the holding of *Wallace & Gale* is controlling in this case.

WECCO further argues that *Wallace & Gale* is ambiguous, and therefore not controlling, because the language from the district court's opinion quoted by this Court failed to distinguish between the terms "exposure" and "bodily injury." *Id.* at 25–26. But WECCO's argument conspicuously ignores that *the very next sentence* of this Court's opinion unambiguously held that "insurers who issued general liability policies to Wallace & Gale for time periods wholly after Wallace & Gale completed its asbestos installation work will only be liable to the extent of the aggregate limit contained in the policy." 385 F.3d at 826. Accordingly, as to the relevant issue in this case—whether bodily injury claims arising from asbestos exposure during WECCO operations that completed prior to the issuance of a policy are subject to the policy's aggregate limit for completed-operations claims—this Court's opinion in *Wallace & Gale* resolved any ambiguity in the district court's opinion.

In sum, we see no reason to depart from *Wallace & Gale*'s clear and controlling interpretation of the completed-operations hazard. Accordingly, we conclude that the district court correctly declared that any bodily injury claim based on an injury that occurred during a WECCO operation that completed prior to the start of a policy falls within the completed-operations hazard of that policy.

15

B.

Next, WECCO contends that the district court erred in declaring that WECCO, not the Insurers, bears the burden of proving that a bodily injury claim falls outside of the products and completed-operations hazards to which the aggregate limits of the Insurers' policies apply. The Insurers argue that WECCO failed to preserve this argument in the district court. We agree with the Insurers.

During the proceedings below, the Insurers moved for partial summary judgment, seeking, among other things, that the district court make the following declaration:

> To avoid the application of the aggregate limit of any particular policy, WECCO bears the burden of proving that the bodily injury that occurred during that policy's policy period arose from asbestos exposure during a WECCO operation that was ongoing during such policy period.

*Gen. Ins.*, 107 F. Supp. 3d at 473. In support of their position, the Insurers relied extensively on *National Union Fire Insurance Co. of Pittsburgh v. Porter Hayden Co.*, No. CCB-03-3408, 2012 WL 734170, at *2 (D. Md. Mar. 6, 2012). Like the present disagreement between WECCO and the Insurers, the parties in *National Union* disagreed as to whether, under Maryland law, "demonstrating that a particular claim falls under the completed operations hazard or the operations hazard is properly part of the prima facie case (to be proven by Porter Hayden) or in the nature of an exclusion (to be proven by the Insurers)." *Id.* The district court concluded that Porter Hayden, as the *insured*, had the burden of showing when the operations hazard applies to a claim. *Id.* In so holding, the district court reasoned that "[the] insured has the burden of proving every fact essential to his or her right to recover as part of its prima facie case, and identifying the hazard that

16

provides coverage for a claim is part of that obligation." *Id.* (internal quotation marks omitted).

Below, in support of their motion for the aforementioned declaration, the Insurers argued that *Porter Hayden*'s holding was controlling. In opposing the Insurers' motion, WECCO did not challenge the Insurers' proposed declaration; nor did WECCO dispute the Insurers' assertion that *Porter Hayden* was controlling. To the contrary, as the district court noted, WECCO instead sought to "shift the focus to an issue not raised in [the] Insurers' motion," that is, whether the Insurers bear the burden of proving that the aggregate limits of the policies in question have actually been "exhausted." *Gen. Ins.*, 107 F. Supp. 3d at 478. But, as the district court correctly recognized, the burden to prove the *applicability* of an aggregate limit is separate and distinct from the burden to prove the *exhaustion* of such limit. *Id.* Because WECCO failed to challenge the propriety of this declaration in the proceedings below, it may not attempt to do so now. *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.").

C.

WECCO also takes issue with the district court's conclusion that St. Paul properly classified several payments made to claimants on behalf of WECCO as payments for completed-operations claims, subject to its policies' aggregate limits. As mentioned before, the district court correctly held that (1) bodily injury arising from WECCO operations that concluded prior to the start of a policy falls within the completed-operations hazard of the policy and (2) WECCO bears the burden of proving that a bodily

17

injury arose from asbestos exposure during a WECCO operation that was ongoing *during* the policy's policy period. *See supra* Part II.A–B. After considering the evidence in the record, the district court concluded that several asbestos-related bodily injury claims paid by St. Paul on behalf of WECCO were completed-operations claims subject to aggregate limits. In reaching this conclusion, the court noted that there was "no real dispute that WECCO had ceased the sale and installation of all asbestos products by no later than 1972." *Gen. Ins.*, 241 F. Supp. 3d at 586. And it relied on WECCO's own statements admitting that it failed to identify any evidence indicating it handled, repaired, removed, or disturbed asbestos-containing materials while St. Paul's policies were in place. *Id.* Thus, the district court concluded that any bodily injury triggering coverage under a St. Paul policy occurred *wholly after* WECCO completed its asbestos-related operations and therefore falls within the completed-operations hazard.

On appeal, WECCO maintains that the actual date it ceased asbestos-related operations is irrelevant in determining whether a claim asserted against WECCO is a completed-operations claim. In particular, WECCO points out that a claimant may *allege* that he or she first suffered an asbestos-related bodily injury during a WECCO operation that took place after 1972, and if the insurer decides to settle, any payout to that claimant by the insurer should be classified as a payout for an operations claim, not a completed-operations claim. WECCO, however, has failed to put forward *any* competent evidence suggesting that St. Paul settled *any* claims for individuals alleging asbestos exposure during post-1972 WECCO operations. Accordingly, we need not—and thus do not— decide whether an *allegation* of asbestos exposure during post-1972 WECCO operations

18

gives rise to a completed-operations or operations claim under the terms of the policies. Therefore, we agree with the district court that the undisputed evidence in the record establishes that St. Paul properly classified the claims at issue as completed-operations claims. [4]

D.

WECCO also asserts that the district court erred in declaring that St. Paul had exhausted the aggregate limits for completed-operations claims within the policies it issued to WECCO.[5] Below, St. Paul claimed that it paid $32 million on WECCO's behalf to resolve asbestos-related bodily injury claims, thereby exhausting the sum total of its policies' aggregate limits. In support of its contention, St. Paul produced two "loss runs"—electronic insurance reports detailing the claims it paid on behalf of WECCO. It attached these loss runs to an affidavit of Irene Muse, a Regional Director at The

---

[4] WECCO's failure to produce any admissible evidence indicating that the Insurers mischaracterized operations claims as completed-operations claims leads us to conclude further that even if the district court erred in allocating the burden to prove the classification of a claim, such error was harmless. *See Humphrey v. Humphrey*, 434 F.3d 243, 248 (4th Cir. 2006) ("[E]ven when the trial court imposes the burden of proof on the wrong party, an appellate court need not remand if that party has not satisfied its more limited burden of production.").

[5] Although U.S. Fire also argued that it properly classified several claims that cumulatively exhausted the aggregate limits of its policies, the district court never ruled definitively on its contentions, concluding instead that WECCO's claims against U.S. Fire were barred by the applicable statute of limitations. *See Gen. Ins.*, 241 F. Supp. 3d at 593 n.15.

19

Travelers Indemnity Company ("Travelers").[6]  Over a hearsay objection by WECCO, the district court admitted the loss runs under the business-records exception to the hearsay rule set forth in Federal Rule of Evidence 803(6).  *Id.* at 588.  Then, after considering the loss runs and other evidence, the district court declared that St. Paul had exhausted the aggregate limits of its policies.  *Id.* at 588–90.

On appeal, WECCO challenges the admissibility of St. Paul's loss run evidence under Rule 803(6).  "We review the district court's admission or exclusion of evidence for an abuse of discretion."  *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010).  According to WECCO, the district court abused its discretion in admitting the loss runs because (1) neither the loss runs nor the data contained therein amount to records "made at or near the time [the claims were paid] by—or from information transmitted by—someone with knowledge," Fed. R. Evid. 803(6)(A); (2) Muse was not qualified to testify about those loss runs; and (3) the loss runs were generated solely for purposes of this litigation.  We disagree.

We first address whether the district court abused its discretion in accepting Muse as a "qualified witness" under 803(6).  Under Federal Rule of Evidence 803(6), "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness, if:

> (A) the record was made at or near the time by—*or from information transmitted by—someone with knowledge*;

---

[6] St. Paul and Travelers became corporately affiliated in 2004, and St. Paul's computer database was integrated into Traveler's computer database.

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another *qualified witness*, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6) (emphases added).

WECCO asserts that Muse was not qualified to lay the foundation for the admission of the loss runs because she lacks personal knowledge of how St. Paul's payment records were maintained prior to St. Paul's affiliation with Travelers and whether such records were accurately entered into Travelers' system. But Rule 803(6) does not "require[] that the records be created by the business having custody of them." *United States v. Wein*, 521 F. App'x 138, 140 (4th Cir. 2013) (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)). And a "'qualified witness' need not have personally participated in the creation of the document, nor know who actually recorded the information." *Id.* (quoting *United States v. Dominguez*, 835 F.2d 694, 698 (7th Cir. 1987)); *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575–76 (6th Cir. 1999) ("All that is required of the [qualified] witness is that he or she be familiar with the record-keeping procedures of the organization."); *United States v. Franks*, 939 F.2d 600, 602 (8th Cir. 1991). Rather, the qualified witness must be able to testify that the record was "kept in the course of a regularly conducted business activity and also that it was a

21

regular practice of that business activity to make the record." *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (internal quotation marks and alterations omitted).

The district court found that "since January 2008, Muse oversaw and managed the handling of claims against WECCO *and the supervision of the individual who has been the primary claims handler on the WECCO account since the late 1990s*." *Gen. Ins.*, 241 F. Supp. 3d at 588 (emphasis added). And Muse also testified that she was familiar with the process and procedures by which the payment records for St. Paul's loss runs were created and maintained. Accordingly, the district court did not abuse its discretion in deeming Muse a qualified witness under 803(6).

WECCO also argues that St. Paul's loss runs are inadmissible because they were created in the course of litigation and thus are not "verifiably contemporaneous" records of payments St. Paul made on WECCO's behalf. Appellant's Br. at 28. This argument is meritless. As mentioned before, Muse averred that she supervised the primary claims handler on the WECCO account. Muse further averred that the information reflected in the loss runs were recorded by a person with knowledge of the information at or near the time of the payments reflected therein, and that the information was maintained during the regular and ordinary course of business. That the loss runs were printed out from Travelers' database for purposes of this litigation does not impact the admissibility of the loss runs because "evidence that has been compiled from a computer database is also admissible as a business record, provided it meets the criteria of Rule 803(6)." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043–44 (9th Cir. 2009) (compiling authorities). Accordingly, we conclude that the district court did not abuse its

22

discretion in admitting St. Paul's loss runs and concluding that it had exhausted the aggregate limits of its policies.[7]

E.

Finally, WECCO asks us to reverse the district court's holding in the alternative that most of WECCO's breach-of-contract claims against the Insurers were time-barred. We review the district court's statute-of-limitations decision de novo. *See Conner v. St. Luke's Hosp., Inc.*, 996 F.2d 651, 652 (4th Cir. 1993).

The parties agree that, under Maryland law, a three-year statute of limitations applies to WECCO's breach-of-contract claims. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101. To determine whether WECCO timely filed its breach-of-contract claims, the district court first looked to the specific breach alleged in WECCO's complaint—that "U.S. Fire and St. Paul improperly allocated settled operations claims as settled completed operations claims, and subjected those claims improperly to the aggregate limit of liability in their policies," resulting in the premature exhaustion of the aggregate limits. *Gen. Ins.*, 241 F. Supp. 3d at 590. The district court then concluded that the statute of limitations began to run with respect to WECCO's claims when the Insurers informed WECCO that the aggregate limits of their polices had been exhausted. *Id.* at 591, 593.

---

[7] Because we conclude that St. Paul's loss runs were sufficient to sustain summary judgment on the question of exhaustion, we decline to address whether the district court abused its discretion in admitting a paralegal's report summarizing various records produced by St. Paul to WECCO in support of St. Paul's exhaustion argument.

23

Specifically, with respect to the primary policies issued by the Insurers to WECCO, the district court found that the statute of limitations began to run on WECCO's breach-of-contract claims, at the latest, in 2003, when the Insurers first notified WECCO that the aggregate limits had been reached on those policies. *Id.* at 589, 593. And with respect to U.S. Fire's umbrella polices, the district court found that the statute of limitations began to run, at the latest, in January 2009, when U.S. Fire notified WECCO that its umbrella policies' limits were exhausted. *Id.* at 593. Given that WECCO did not assert breach-of-contract claims against the Insurers until January 14, 2013—more than three years after the Insurers' notices—the district court concluded that almost all of WECCO's breach-of-contract claims were time-barred.[8]

On appeal, WECCO contends that the Insurers' notices amounted to nothing more than an anticipatory breach—giving WECCO the *option* to sue at that time. According to WECCO, the Insurers did not actually breach their contracts with WECCO until they first refused to defend and indemnify WECCO against asbestos-related bodily injury claims. Each claim the Insurers have declined to pay since that time constitutes a new breach, WECCO maintains, subject to a new statute-of-limitations period. Thus, as WECCO sees it, the Insurers have breached their contracts with WECCO as recently as February 2015, when they refused to make contractually obligated payments on behalf of WECCO. We disagree.

---

[8] Because St. Paul did not inform WECCO that the aggregate limits of its two "umbrella" policies had been exhausted until June 2013, the court did not find WECCO's claims against those policies time-barred. *Id.* at 589 n.9.

As the district court recognized, WECCO did not allege that the Insurers breached their contracts with WECCO by refusing to defend or indemnify WECCO against any particular claims alleging asbestos-related bodily injury. To the contrary, WECCO alleged that the Insurers "breached their obligations under their policies" by their "improper *allocation* of settled operations claims as settled completed operations claims." J.A. 1233 (emphasis added). In determining at which point a cause of action begins to accrue, Maryland courts abide by "the discovery rule, which now applies generally in all civil actions, and which provides that a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Hecht v. Resolution Tr. Corp.*, 635 A.2d 394, 399 (Md. 1994).

Here, WECCO was aware of the way in which the Insurers were classifying the claims they paid on behalf of WECCO since at least 2003 (with respect to the primary policies issued to WECCO) and 2009 (with respect to U.S. Fire's umbrella policies). Accordingly, we agree with the district court's conclusion that most of WECCO's breach-of-contract claims are barred by the applicable statute of limitations.

## III.

For reasons stated above, we affirm the judgment of the district court.

*AFFIRMED*

25