**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1970**

JOHN RICHARD LAMM,

        Plaintiff - Appellant,

    v.

BRANCH BANKING AND TRUST COMPANY; SCOTT P. EVANS,

        Defendants - Appellees,

    and

MICHAEL P. SOUTHERN; UNITED STATES OF AMERICA,

        Defendants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Louise W. Flanagan, District Judge.  (4:14-cv-00219-FL)

Submitted: August 31, 2018                Decided:  September 6, 2018

Before MOTZ and THACKER, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Mary-Ann Leon, THE LEON LAW FIRM, P.C., Greenville, North Carolina, for Appellant.  Michael C. Lord, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John Richard Lamm appeals the district court's order granting summary judgment to Scott P. Evans and Branch Banking & Trust Company ("BB&T") in Lamm's civil action. BB&T, Lamm's employer of nearly 30 years, terminated Lamm's employment after an internal investigation concluded that Lamm had falsified information relating to his incentive compensation. In his complaint, Lamm asserted claims of tortious interference with contract and wrongful attachment against Evans, his former supervisor, and negligent supervision and retention against BB&T. On appeal, Lamm argues that he forecast sufficient evidence that Evans, acting with legal malice, induced the termination of Lamm's employment. With respect to the wrongful attachment claim, Lamm disputes the district court's application of the safe harbor provision in 31 U.S.C. § 5318(g)(3) (2012). Finally, Lamm contends that BB&T failed to prevent Evans from manipulating the investigation. For the reasons that follow, we affirm.

"We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 353 (4th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

BB&T began investigating Lamm, a corporate banker, after Evans discovered that funds Lamm had transferred from a maturing certificate of deposit to a checking account had been incorrectly coded as new money. Because BB&T's incentive scheme provided

3

greater compensation for generating new business, Evans suspected that Lamm was attempting to inflate his incentive credit. As a result of several inquiries made by Evans, a suspicious incident report ("SIR") was filed. The following day, a BB&T executive received a voicemail from Lamm, who explained that he had mistakenly directed the deposit to be recorded as new money and that he intended to transfer the funds out of the account soon.

As part of the ensuing corporate investigation, Evans forwarded to Michele Greene, the lead investigator, copies of incentive compensation reports that Lamm had completed in 2009 and 2010. According to Evans, the reports grossly overstated Lamm's production, thus resulting in a bonus payout larger than Lamm deserved. When asked about the reports, Lamm simply stated that he had used his best judgment. Finding this explanation inadequate, BB&T terminated Lamm's employment. BB&T then referred the matter to the United States Secret Service for further review. Pursuant to a federal warrant, the United States seized Lamm's bank accounts on suspicion of bank fraud. Lamm eventually settled the matter, agreeing to forfeit $254,236.78 of his seized assets.

In support of his tortious interference claim, Lamm argues that Evans misled the investigators in order to ensure Lamm's firing. Under North Carolina law, a plaintiff asserting a claim of tortious interference with contract must establish:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

4

*Krawiec v. Manly*, 811 S.E.2d 542, 546 (N.C. 2018) (internal quotation marks omitted). A plaintiff can prevail on a tortious interference claim against a "non-outsider" to a contract—*i.e.*, a person "who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter"—only if the non-outsider maliciously procured the contract's termination. *Smith v. Ford Motor Co.*, 221 S.E.2d 282, 292 (N.C. 1976). "It is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast evidence that the defendant acted with legal malice." *Hubbard v. N.C. State Univ.*, 789 S.E.2d 915, 922 (N.C. Ct. App. 2016) (internal quotation marks omitted). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.* (internal quotation marks omitted).

Lamm asserts that he could not have received any incentive credit for the disputed transfer of funds unless and until the checking account remained open for 90 days. Lamm insists that Evans knew of the 90-day rule, yet nevertheless permitted BB&T to file an SIR. However, Lamm presents no evidence that, prior to the SIR, he informed Evans of his intention to close the checking account before the incentive credit vested. Indeed, the record establishes that the SIR was filed the day before Evans received notice of Lamm's voicemail. Because Evans could not be expected to divine Lamm's plans for the checking account, we find Lamm's argument unpersuasive.

With regard to his incentive compensation reports, Lamm contends that Evans misrepresented the incentive compensation process to Greene by suggesting that Lamm, without supervisory review, submitted the reports directly to BB&T's incentive

5

department. Essentially, Lamm avers that any improper reporting was attributable to the negligence of his former supervisor and that Evans' failure to disclose this fact during Greene's investigation resulted in Lamm's firing. However, the evidence on which Lamm relies actually shows that Evans properly described the incentive reporting procedures to Greene. We thus reject this claim.

While Lamm levels several other charges against Evans—accusing him of manufacturing evidence and supplying false information to the investigators—he fails to elaborate on these allegations. Based on our review of the record, we conclude that Lamm failed to forecast evidence demonstrating that Evans acted "without legal justification." *Childress v. Abeles*, 84 S.E.2d 176, 182 (N.C. 1954) (internal quotation marks omitted). We therefore agree with the district court's grant of summary judgment to Defendants on this claim.

To prevail on a claim of malicious and wrongful attachment in North Carolina, a plaintiff must establish, among other things, "that the attachment proceeding has legally terminated in favor of the attachment defendant." *Brown v. Guar. Estates Corp.*, 80 S.E.2d 645, 650-51 (N.C. 1954) (setting forth elements of claim). In his opening brief, Lamm makes no argument that the underlying attachment proceedings terminated in his favor and, thus, has abandoned this claim. *Abdul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 290 (4th Cir. 2018) ("[C]ontentions not raised in the argument section of

6

the opening brief are abandoned." (internal quotation marks omitted)).[1]  Accordingly, we need not decide whether the district court properly applied the safe harbor provision in 31 U.S.C. § 5318(g)(3) or whether Evans properly preserved his immunity defense.

"To support a claim of negligent retention and supervision against an employer, the plaintiff must prove that the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Wilkerson v. Duke Univ.*, 748 S.E.2d 154, 160 (N.C. Ct. App. 2013); *accord Pleasants v. Barnes*, 19 S.E.2d 627, 629 (N.C. 1942).  Because Lamm has not shown that Evans committed any tortious acts, this claim necessarily fails.[2]

---

[1] In any event, Lamm could not credibly contend that the proceedings terminated in his favor, given that his settlement with the United States resulted in a substantial forfeiture.  *See Bryant v. Short*, 352 S.E.2d 245, 246 (N.C. Ct. App. 1987) (holding, in context of malicious use of civil process claim, underlying proceeding did not terminate in favor of party who agreed to pay $30,000 as part of settlement).

[2] Although Lamm contends that other BB&T employees also acted incompetently, his opposition to the summary judgment motion limited his claims to Evans' allegedly tortious conduct.  Accordingly, Lamm has abandoned any argument relating to other BB&T employees.  *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) ("When a party in a civil case fails to raise an argument in the lower court and instead raises it for the first time before us, we may reverse only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice.").

Accordingly, we affirm the judgment of the district court. We deny Lamm's motion for judicial notice. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*