**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2217

BLISSFUL ENTERPRISES, INC., trading as Comfort Inn & Suites - Edgewood,

Plaintiff – Appellant,

v.

CINCINNATI INSURANCE COMPANY,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:18-cv-01221-GLR)

Argued:  October 27, 2021                    Decided:  October 11, 2022

Before DIAZ and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Eric Broch Lawson, SILVER & BROWN, Fairfax, Virginia, for Appellant. Bryant S. Green, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:**  C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for Appellant. Craig D. Roswell, NILES, BARTON & WILMER, LLP, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Blissful Enterprises, Inc., owns and operates a hotel in Edgewood, Maryland. Blissful insured the hotel property through a policy issued by Cincinnati Insurance Company. After Cincinnati denied Blissful's claim for the cost of repairing a damaged underground pipe, Blissful sued. The district court granted summary judgment in favor of Cincinnati. We affirm.

I.

In January 2016, Blissful employees discovered a large hole in the ground next to the hotel building. Blissful reported the finding, which it characterized as a "sinkhole," to Cincinnati and stated that underground pipes forming part of the hotel's storm-water drainage system may have been damaged. A week later, a Cincinnati claims specialist sent Blissful a reservation-of-rights letter. The letter explained that the insurance policy "may provide coverage to damages resulting from the development of a sinkhole," though the cost of "filling the sinkhole itself" would not be covered. J.A. 321. It also noted that "if there are damages to underground pipes, drains or flues, they must be physically attached to Covered Property for the policy to respond." J.A. 321. The letter reminded Blissful that the cost of any investigation into whether pipes were damaged by a sinkhole or were attached to the building was to be borne by Blissful.

Blissful then retained an engineer, William Baker, to investigate the hole on the property. Baker summarized his findings in a February 3 letter to Cincinnati, stating that a "metal pipe has failed at the connection to the existing concrete manhole. The result[] is a large amount of soil has been displace[d] down the pipe, has caused two small retaining

2

walls to fail and to void soil from under concrete and stone inlet aprons located in a drainage swale. The loss of soil will soon be affecting the foundation and the building structure." J.A. 326. The next day, a Cincinnati claims specialist told Blissful that, "based on the engineer's report and hotel site plan, we will provide coverage for the underground piping [but not for the cost of] filling the sinkhole itself." J.A. 658. Over the next two months, Blissful negotiated a bid with Comer Construction, Inc., to repair the damage to the pipe. The estimated repair cost was $335,484.

After receiving this estimate from Blissful, Cincinnati chose to inspect the loss and evaluate the proposal. Cincinnati contacted Baker, the engineer retained by Blissful, to investigate whether the incident was a sinkhole as defined by the insurance policy. Baker could not confirm that it was a sinkhole so defined; therefore, the parties each retained an expert and scheduled a joint inspection of the property for May 23, 2016. After the inspection, Blissful's expert opined that "the bottom portion of the metal pipe is significantly corroded resulting in a loss in the structural integrity of the pipe that in turn appears to have contributed to the lateral deflection or shearing in the pipe and its subsequent collapse." J.A. 392. "As a result of the collapse of the pipe, the pipe sheared from the opening into the southern side of the box manhole structure, . . . allowing [the surrounding soils] to become mobilized and enter into the storm drain where they were transported down gradient into the storm drain system resulting in the formation of a large sinkhole." J.A. 393. Cincinnati's expert disputed the sinkhole characterization but agreed that "[t]he hole has occurred because of a breach in the pipe where it connects to the

3

manhole has resulted in soil movement. The pipe breach has allowed for the soil in the area to enter the pipe and be transported away leaving a hole." J.A. 335.

On August 1, 2016, having determined that the loss was not actually caused by a sinkhole as defined in the policy, Cincinnati denied all coverage for the loss. Blissful sued Cincinnati in Maryland state court, alleging breach of contract and promissory estoppel. Cincinnati removed the case to federal court, and both sides moved for summary judgment. The district court granted summary judgment in favor of Cincinnati, and Blissful appealed.

## II.

"We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 353 (4th Cir. 2018), *as amended* (Mar. 28, 2018). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted).

The parties agree that Maryland substantive law governs this contract dispute. "Under Maryland law, insurance policies are interpreted in the same manner as contracts generally; there is no rule in Maryland that insurance policies are to be construed most strongly against the insurer." *Catalina Enters., Inc. Pension Tr. v. Hartford Fire Ins. Co.*,

4

67 F.3d 63, 65 (4th Cir. 1995) (citing *Collier v. MD-Individual Prac. Ass'n*, 607 A.2d 537, 539 (Md. 1992)); *see Connors v. Gov't Emps. Ins. Co.*, 113 A.3d 595, 603–605 (Md. 2015).

Blissful's insurance policy is an "all risks" policy, meaning it covers all risks of loss unless specifically excluded by the policy.  The main coverage form of the policy—the Building and Personal Property Coverage Form—excludes underground pipes from coverage.  But Blissful purchased a Hotel Commercial Property Endorsement, which includes a provision extending coverage to underground property.  In relevant part, the Underground Property Extension states:

> **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:
>
> **Underground Property**
>
> (1) We will pay for 'loss' resulting from any of the Covered Causes of Loss to:
>
> . . .
>
> > (b) Underground pipes, flues or drains if they are attached to Covered Property.
>
> . . .
>
> (3) For this Coverage Extension, **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:
>
> **n. Underground Pipes, Flues or Drains**
>
> > Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**.

J.A. 113–114.

"Covered Causes of Loss" is a defined term in the policy that means risks of direct physical loss unless the loss is limited or excluded by the policy. Cincinnati identifies three exclusions that it claims prevent coverage here. First, the policy excludes from coverage "'loss' caused by or resulting from . . . [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself[.]" J.A. 40. The district court correctly held that this exclusion applies here, and Blissful does not meaningfully contest that conclusion on appeal. Second, Cincinnati contends, and the district court held, that the "earth movement" exclusion applies. We need not address that argument, as we agree with the district court that other exclusions apply to preclude coverage under the Underground Property Extension. Third, the policy excludes loss caused by or resulting from "[c]ollapse," except as provided in the Collapse Extension. J.A. 42. That extension is the focal point of this appeal.

As relevant here, the Collapse Extension states:

> (2) We will pay for "loss" to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Part, if the collapse is caused by one or more of the following:
>
> . . .
>
> (b) Decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse[.]

J.A. 52. Blissful reasons that the Collapse Extension provides coverage for its loss because the collapse of the underground storm-drain pipe was caused by hidden decay. Cincinnati

6

counters that, even assuming the correctness of Blissful's posited causal chain, the Collapse Extension does not cover this loss because underground pipes are not "Covered Property" for purposes of the Collapse Extension.

As previously explained, the Building and Personal Property Coverage Form specifically excludes underground pipes from the definition of "Covered Property." Subsection 3 of the Underground Property Extension amends that provision to include underground pipes attached to covered property, but only "[f]or this Coverage Extension." J.A. 114. We agree with the district court that the phrase "[f]or this Coverage Extension" shows the drafters of the policy intended for the specified substitution to apply only to the Underground Property Extension and not to other extensions, like the Collapse Extension. In other words, subsection 3 amends the definition of "Covered Property" to include underground pipes attached to covered property only for purposes of the Underground Property Extension. Misreading subsection 3 to amend the policy for all purposes would contravene the text of the Underground Property Extension by "applying one of its special provisions to the [p]olicy as a whole." *Blissful Enters., Inc. v. Cincinnati Ins. Co.*, 421 F. Supp. 3d 193, 200 (D. Md. 2019).

This conclusion does not render the underground pipes provision of the Underground Property Extension illusory. *See Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1380 (Md. 1997) (holding coverage grant illusory because an exclusion "totally swallow[ed] the insuring provision"); *Harleysville Preferred Ins. Co. v. Rams Head Savage Mill, LLC*, 187 A.3d 797, 817–818 (Md. Ct. Spec. App. 2018) (holding exclusion did not render coverage illusory because some claims would be covered). Cincinnati identifies

7

various causes of loss to underground pipes attached to covered property that would be covered by the Underground Property Extension even though losses caused by collapse and hidden decay are not covered.

Finally, we agree with the district court that, if estoppel is available in this context, Blissful has not offered evidence of detrimental reliance sufficient to create a genuine dispute of material fact. *See Rubinstein v. Jefferson Nat'l Life Ins. Co.*, 302 A.2d 49, 52 (Md. 1973) ("One asserting the benefit of an estoppel must have been misled to his injury and have changed his position for the worse, having believed and relied on the representations of the party sought to be estopped."). Blissful has not identified any evidence that it relied to its detriment on the claims specialist's February 2016 representation that Cincinnati would cover this loss. Although Blissful obtained an estimated cost of repairs from Comer Construction before Cincinnati changed its position, Blissful would have needed an estimate regardless, and it has not shown that obtaining the estimate was detrimental in any way.

Accordingly, for these reasons we affirm the district court's order granting summary judgment to Cincinnati and denying Blissful's cross-motion for the same.

*AFFIRMED*