**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1739**

VIRGINIA CALLAHAN; T.G.,

        Plaintiffs - Appellants,

      v.

PACIFIC CYCLE, INC.,

        Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Mark Coulson, Magistrate Judge. (1:15-cv-02815-JMC)

Argued: September 27, 2018               Decided: November 21, 2018

Before DIAZ, THACKER, and HARRIS Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Francis Joseph Collins, KAHN, SMITH & COLLINS, PA, Baltimore, Maryland, for Appellants. Jonathan M. Judge, SCHIFF HARDIN, LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Jacqueline S. Togno, KAHN, SMITH & COLLINS, P.A., Baltimore, Maryland, for Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Virginia Callahan and her minor granddaughter T.G. ("Appellants") initiated this action against Pacific Cycle and Toys "R" Us ("Appellees"). Appellants alleged various strict liability, negligence, and breach of warranty claims, all arising from an accident involving T.G. and a bike manufactured and sold by Appellees. On January 20, 2017, a jury found that Appellants had not established that the bike was defective. Appellants now challenge five of the district court's evidentiary rulings, portions of its jury instructions, and its decision to deny Appellant Callahan's motion for entry of judgment. Recognizing that the district court is in the best position to resolve these issues, we affirm.

I.

In September 2011, Virginia Callahan bought a bike for her 11-year-old granddaughter, T.G. Pacific Cycle designed and manufactured the bike. Toys "R" Us assembled and sold it. According to Appellants, on September 16, 2012, T.G. rode the bike for only the second time. During that second ride, T.G. rode the bike down a hill and struggled to control her speed. After attempting and failing to apply the rear brakes, T.G. applied the front brakes. The bike flipped forward. T.G.'s mouth crashed into the bike's handlebars. She lost three teeth and fractured another. Three years later, Appellants sued Appellees, alleging that a manufacturing defect in the bike's rear brake made the brake too difficult for T.G. to engage.

On January 20, 2017, a jury found that Appellants had not demonstrated that the bike was defective. As a result it did not reach the issue of causation. On appeal,

2

Appellants challenge many of the rulings that the district court made before, during, and after trial. Appellants challenge five of the district court's evidentiary rulings, including the court's decisions to (1) allow Appellees to make an argument not disclosed in the joint pretrial order; (2) allow Appellees' expert to testify regarding the cause of the accident; (3) allow Appellees' expert to use a stick figure illustration as a demonstrative; (4) admit Appellees' certificates of conformity under the business records hearsay exception; and (5) prohibit the jurors from handling or testing the bike. Appellants also challenge the district court's decision to instruct the jury on spoliation of evidence. Finally, Virginia Callahan challenges the district court's denial of her motion to enforce Appellees' offer, made before trial pursuant to Federal Rule of Civil Procedure 68, to allow judgment against them in exchange for $50,000.

## II.

Appellants argue that the district court made several reversible errors in resolving evidentiary disputes. Specifically, Appellants assert that the district court erred by allowing Appellees "to vary their theories and evidence from what they disclosed in the pretrial order"; allowing Appellees' expert to "testify beyond his area of expertise and render opinions on accident reconstruction" and "use a stick man drawing that was not a fair and accurate depiction of the accident" as a demonstrative; admitting Appellees' certificates of conformity over Appellants' hearsay objections; and prohibiting the jury "from inspecting and touching the bike." Appellants' Br. 7–8.

3

## A.

This court reviews the district court's evidentiary decisions for abuse of discretion. *See Campbell v. Boston Sci. Corp.*, 882 F.3d 70, 77 (4th Cir. 2018). That standard applies to each of the challenged evidentiary rulings. *See, e.g.*, *McLean Contracting Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 479 (4th Cir. 2002) (reviewing a decision that the parties' pretrial order barred the presentation of a new theory for abuse of discretion); *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (reviewing a decision on the admissibility of an expert opinion for abuse of discretion); *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir. 1977) (reviewing a decision to permit demonstrative evidence for abuse of discretion); *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 357 (4th Cir. 2018) (reviewing an application of the business records exception to hearsay for abuse of discretion); *United States v. Aragon*, 983 F.3d 1306, 1309 (4th Cir. 1993) (reviewing a decision to send properly admitted exhibits to the jury room for abuse of discretion).

Accordingly, this court will overturn an evidentiary decision only if it was "arbitrary and irrational." *Gentry v. E. W. Partners Club Mgmt. Co.*, 816 F.3d 228, 239 (4th Cir. 2016) (quoting *Noel v. Artson*, 641 F.3d 580, 591 (4th Cir. 2011)). In determining whether a decision was arbitrary and irrational, this court "look[s] at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011) (quoting *United States v. Udeozor*, 515 F.3d 260, 265 (4th Cir. 2008)). Additionally, even where we determine that the district court erred in resolving an

evidentiary issue, that decision "is reversible only if it affects a party's substantial rights." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006).

Viewing the evidence in the light most favorable to Appellants, none of the challenged evidentiary rulings constitute reversible error.

1.

The first evidentiary ruling that Appellants challenge is the district court's decision to allow Appellees to argue that the condition of the bike changed even though Appellees did not identify that argument in the parties' joint pretrial order. Appellants and Appellees filed a joint pretrial order approximately one month before the trial began. The pretrial order outlined Appellants' claim that a defective rear brake caused T.G.'s accident. It also outlined Appellees' defense that the brake was not defective. Appellees took the position that "the back brake functioned properly." J.A. 74–75.[1] Additionally, Appellees claimed that T.G.'s size, inexperience, and failure to follow warning labels caused her accident.

A trial judge has broad discretion to admit or exclude evidence that is outside the scope of the pretrial order. *See Aiken Cty. v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 671 (4th Cir. 1989). Generally, if a party fails to identify an issue in the pretrial order, that party loses the right to have the issue tried. *See* Fed. R. Civ. P. 16(c) advisory

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

committee's note to 1983 amendment ("If counsel fail to identify an issue for the court, the right to have the issue tried is waived."). That means that the district court may exclude evidence on the grounds that it was not included in the pretrial order. *See, e.g.*, *McLean*, 277 F.3d at 479 (finding the district court's decision to exclude certain evidence was a proper exercise of discretion because the proponent failed to include the case theory related to that evidence in the pretrial order despite having notice that the opposing side would be pursuing a related theory).[2] However, the district court also retains the right to admit evidence even though it was not included in the pretrial order. *See, e.g.*, *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 940 (4th Cir. 1991) (finding the district court did not abuse its discretion in permitting the defendant to call an expert witness not identified in the pretrial order because the plaintiff had been put on notice of the addition during the pretrial conference and the plaintiff was permitted to call an additional expert to counter the testimony).[3]

Courts consider five factors when deciding whether to admit or exclude evidence supporting issues that a party did not identify in the pretrial order. Those include (1)

---

[2] *See also Burlington Ins. Co. v. Shipp*, No. 98-2722, 2000 WL 620307, at *4 (4th Cir. May 15, 2000) (per curiam) (finding the trial court did not abuse its discretion by excluding evidence supporting an issue that was not identified in the pretrial order because it would have disrupted the trial while yielding evidence that was only marginally useful to the jury).

[3] *See also E. Associated Coal Corp. v. Loc. 781, United Mine Workers of Am.*, No. 98-1047, 1999 WL 3373, at *3 (4th Cir. Jan. 6, 1999) (per curiam) (finding the trial court did not abuse its discretion by allowing evidence supporting an issue that was not identified in the pretrial order because the failure to disclose was inadvertent and the opposing party failed to demonstrate prejudice).

surprise to the party opposing the evidence; (2) feasibility of curing that surprise; (3) extent to which allowing the evidence would disrupt the trial; (4) importance of the issue; and (5) the explanation for the failure to identify the issue before trial. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 369 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622, 649 n.25, 650 (1988). Applying those factors here, it is clear the district court did not abuse its discretion in allowing Appellees to present evidence supporting their theory that the condition of the bike had materially changed since the accident.

### a. Surprise

To begin, the issue as to the condition of the bike should not have come as a surprise to Appellants. Appellants had two indications that the condition of the bike might become an issue at trial: First, on December 19, 2016 -- the same day that the parties filed the pretrial order -- Appellees filed a motion to exclude in-court testing of the bike on the grounds that the condition of the bike might have changed since the accident. That should have been a clear indication to Appellants that the condition of the bike might be an issue at trial. Second, Appellants should have realized that the condition of the bike might be an issue at trial when the condition of the bike did, in fact, change.

Appellants alone possessed the bike during the five years between the accident and the trial. At some point during those five years, the position of the barrel at the end of the rear brake cable and the position of the handlebars relative to the alignment of the front wheel changed. Indeed, Appellants have never disputed that the condition of the bike

7

changed. *See, e.g.*, J.A. 622 ("[T]he handlebars are slightly different from [where] they were at one point . . . ."); *id.* at 623 ("[W]e didn't dispute [that] . . . [a]t some point, [the handlebars were] some other way. . . . Somehow [the handlebars] changed.").

### b. Feasibility of Curing Surprise

To the extent that Appellants *were* surprised by Appellees' argument that the condition of the bike had changed, the district court took steps to cure the surprise. For instance, the district court allowed Appellants to recall their bike expert to rebut Appellees' evidence regarding the change in the condition of the bike.

### c. Disruption

Allowing Appellees to argue that the condition of the bike changed might have resulted in a slight disruption to the four day trial. Although Appellees raised their concern that the condition of the bike might have changed before the trial began, they did not argue that the condition of the bike had *in fact* changed until the morning of the third day of trial. At that point, Appellants' expert had already testified regarding the condition of the bike and the cause of the accident. But the district court did not find that allowing Appellees to raise the argument, and allowing Appellants to respond to it, to be detrimentally disruptive: as noted above, at the end of the trial, the district court allowed Appellants to recall their expert to rebut Appellees' argument that the condition of the bike had changed.

### d. Importance

Next, the condition of the bike was significant. The relevance of the bike, in a lawsuit alleging a manufacturing defect in that bike, is obvious. Nonetheless, Appellants

dispute this point. Appellants attempt to parse the parts of the bike by arguing that, although the brake was important, the handlebars were irrelevant. As an initial matter, a change in the condition of any part of the bike makes it more likely that the condition of another part of the bike -- one that is perhaps more important to the merits of the case -- is not the same. But even if this court were inclined to dissect the bike, Appellants' argument still fails. The odd orientation of the handlebars was a factor Appellees' expert took into consideration when he concluded that the accident was likely a "side-spill." J.A. 555–56. Thus, the orientation of the handlebars was material to Appellees' defense that a defect in the back brake would not have caused the accident.

### e. Explanation

Finally, Appellees had an unimpeachable explanation for their failure to identify the issue in the pretrial order: the bike was in Appellants' custody. Before the trial began, Appellees had no reason to suspect that its condition had changed. As soon as Appellees did have reason to suspect the condition of the bike had changed, they raised the issue.

The balance of the factors weighs in favor of Appellees. Accordingly, the district court did not abuse its discretion by allowing Appellees to present evidence regarding the change in the condition of the bike.

### 2.

Appellants next argue that the district court abused its discretion by permitting Appellees' expert, Patrick Logan, to testify regarding the cause of the accident.

9

a.

Appellants assert that Logan's testimony regarding the cause of the accident was unreliable and should have been excluded under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Appellees argue in response that Appellants waived their objection to the reliability of Logan's opinion because they did not raise it at trial.

Appellees hired Logan, a mechanical engineer and an expert in bike design, testing, and accessories, to investigate the cause of the accident. Logan conducted an investigation and summarized his findings in an expert report. During the trial, Logan testified that T.G.'s accident was the result of user error. Relying on "the fact that the wheel [was] turned from the direction of the handlebar," the "mark on the top of the top tube," and the "contact with teeth to the handlebar," Logan characterized the accident as a "side spill" caused by misuse as opposed to a "pitch-over" caused by brake malfunction. J.A. 154.

During the trial, Appellants objected to Logan's testimony several times. Most often, Appellants objected to Logan's testimony on the basis that Logan was not qualified to testify as an accident reconstructionist. *See, e.g.*, J.A. 516 ("I think I am done regarding [Logan's] qualifications, and I do oppose him providing any opinions regarding accident reconstruction of any kind."). At no time did Appellants object to Logan's testimony on *Daubert* grounds.

"To preserve an argument on appeal, [a party] must object on the same basis below as he contends is error on appeal." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). The basis of the objection must be stated specifically, and "an objection

10

on one ground does not preserve objections on different grounds." *Id.* (quoting *United States v. Massenburg*, 564 F.3d 337, 342 n.2 (4th Cir. 2009)). The specificity requirement applies with equal force to *Daubert* objections. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 755–56 (7th Cir. 2005) (finding objections made at trial insufficient to preserve a *Daubert* argument on appeal); *United States v. Diaz*, 300 F.3d 66, 75 (1st Cir. 2002) (same); *see also Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 189 (1st Cir. 1997) ("[W]e can envision few, if any, cases in which an appellate court would venture to superimpose a *Daubert* ruling on a cold, poorly developed record when neither the parties nor the nisi prius court has had a meaningful opportunity to mull the question.").

Appellants did not object on *Daubert* grounds before or during trial nor did they request a *Daubert* hearing. Appellants did not even mention *Daubert*, Federal Rule of Evidence 702, or any form of the word "reliability" in any objection at trial. When Appellants attempted to have the district court exclude testimony regarding accident reconstruction, Appellants did so by suggesting that Logan's testimony was based on speculation. *See* J.A. 350–51 ("[Logan] engaged in some sort of speculation . . . but he has no forensic background for accident reconstruction, and he starts to just give some wild opinions . . . we would ask that any such testimony about how the accident happened, whether it was pitch-over or something else, be excluded from evidence."). But mentioning speculation and hinting at the reliability of an expert's testimony is not sufficient to preserve a *Daubert* argument for appeal. *See Diaz*, 300 F.3d at 75–76 (finding a vague reference to the "*Daubert* Trilogy" in a pretrial memorandum

11

insufficient to preserve an objection to the reliability of an expert's methodology). Without development of the issue below, this court declines to address the reliability and relevance inquiry which *Daubert* requires.

b.

Appellants also argue that the district court should have excluded Logan's testimony regarding the cause of the accident because it was not covered in his expert report and because Logan was not qualified to testify as an accident reconstructionist. Neither of those arguments holds water.

First, Logan's expert report did conclude that the accident was, at least in part, the result of rider inexperience. But even if it did not, Logan discussed the cause of the accident in detail in his deposition, which was taken ten months before the trial began. For that reason, any failure to mention the cause of the accident in his expert report did not prejudice Appellants. *See Bresler*, 855 F.3d at 190 ("[A] party who fails to comply with the expert witness disclosure rules is prohibited from using that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." (internal quotation marks omitted)).

Second, the district court *agreed* with Appellants that Logan was not qualified to testify as an accident reconstructionist.[4] The district court allowed Logan to testify

---

[4] Logan is a mechanical engineer and an expert in "bicycle design, testing and accessories." J.A. 152. Appellees offered him as an expert in "bicycle design, performance, and accident investigation." *Id.* at 512. Logan's "accident investigation" involved determining "what potential causes could account for the post-accident condition of the bicycle." *Id.* at 517-18. Accordingly, Logan examined, the condition of (Continued)

12

regarding "what happens to bicycles when certain kinds of accidents happen," but ruled that Logan would not be permitted to testify regarding "what happens to people when they take certain actions and how they might be injured." J.A. 548. At times, when Appellants objected to Logan's testimony on the grounds that it waded into accident reconstruction, the district court disagreed and overruled the objection. But the district court also stopped Logan's testimony when he thought it did cross that line. *See, e.g.*, *id.* at 548-49 ("I think we are starting to cross a line into what [Appellants have] called accident reconstruction . . . I don't want [Logan] to go . . . into kind of showing to the jury: Here is what happens when people hit the front brake too much."). To the extent Appellants are asking this court to review the district court's application of its ruling on Appellants' objection, "we are obliged to accord [it] substantial deference." *Wolfe v. Clarke*, 718 F.3d 277, 284 (4th Cir. 2013) (quoting *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co.*, 472 F.3d 99, 113 (4th Cir. 2006)). Indeed, "to sustain appellate review, district courts need only adopt a reasonable construction of the terms contained in their orders." *Id.* (quoting *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 706)). The district court here reasonably interpreted and applied its own ruling.

---

the brakes and other damages marks on the bike's pedals, handlebars, seat, crank, chain ring, front wheel rim, and rear derailleur cable. *See id.* at 156-59. With that information, Logan reached a conclusion regarding what could have caused the accident. *See id.* at 161-62. In contrast, an "accident reconstructionist" would determine how an accident occurred by measuring "skid marks and tire tracks" at the scene of the accident and noting "weather conditions and topography" that could have contributed to the accident. *Id.* at 517-18.

c.

Appellants next argue that the district court abused its discretion by allowing Logan to use a stick man demonstrative during his testimony. Logan prepared an "illustration" that purported to show how, as a result of engaging the front left brake of a bike, a rider could experience a "pitch-over" accident. J.A. 545–46. Appellants objected to the illustration on the basis that it was "not a fair depiction of [the] bike, [the] Plaintiff, [the] speed, or anything else about [the] accident." *Id.* at 546. The district court overruled Appellants' objections and refused to prohibit Logan from using the demonstrative. But, to cure any confusion that might have stemmed from Logan's use of the demonstrative, the court instructed the jury to consider the demonstrative with caution. *See id.* at 551 ("So, ladies and gentlemen, you're going to be shown a diagram, and we're going to have some testimony about that. I want to make it clear: This diagram is not specific to this case. It is not representative of the Plaintiff or the bicycle in question.").

Federal Rule of Evidence 611 gives district courts broad discretion over the presentation of evidence in the course of the trial "so as to make the . . . presentation effective" and "avoid wasting time." Fed. R. Evid. 611. Here, when Appellants objected to Logan's demonstrative on the basis that it was not "a fair and accurate representation of something relevant to the case," the district court concluded that it "illustrate[d]" Logan's testimony. J.A. 550–51. Additionally, the district court mitigated any risk of prejudice that the stick man might have posed by instructing the jury that the diagram was not specific to the accident at issue. With that in mind, there is no basis for this court

14

to conclude that the district court abused its broad discretion by allowing Appellees' expert witness to use a demonstrative.[5]

3.

Appellants next argue that the district court abused its discretion by allowing the admission of Appellee Pacific Cycle's certificates of general conformity ("COGCs") under the business records hearsay exception. Appellants argue that the COGCs did not satisfy the requirements of the business records exception. Specifically, Appellants argue that Appellees failed to demonstrate that the COGCs were prepared by someone with knowledge because the records rely on testing done by a third party.[6]

Pacific Cycle's Senior Director of Bicycle Product Development, John Werwie, laid the foundation for the COGCs as business records. Werwie testified that Pacific Cycle uses the COGCs to certify to retailers that their products conform to Consumer Product and Safety Commission ("CPSC") standards. Werwie testified that Pacific Cycle relies on a laboratory, SGS Testing Services ("SGS"), to conduct quality control tests on

---

[5] Even if the trial court's decision to allow Logan to use a stick man demonstrative was an abuse of discretion, it was harmless. The demonstrative illustrated potential causes of the accident. *See* J.A. 551 (describing the demonstrative as illustrating "a very high level and just in general, the overall concept of a pitch-over accident following strong application of the left front brake"). Without reaching causation, the jury concluded that Appellants had not satisfied their burden to prove that the back brake was defective. *See id.* at 104. On that issue alone, the jury reached a verdict in favor of Appellees.

[6] Appellants also argue that the trial court abused its discretion by admitting the COGCs because they are irrelevant. Appellants argue that, because the inspections were of exemplar bikes and not T.G.'s bike, they are irrelevant. However, it does not appear that Appellants made that argument during trial. They thus waived the argument.

15

its bikes. Werwie testified that the COGCs are created in the regular course of business, by Pacific Cycle employees, at or around the time they received passing CPSC testing results from SGS, that these documents are maintained in the regular course of business, that he was familiar with SGS's pre-production testing, and that SGS's testing was done in the normal course of business.

During Werwie's testimony, Appellants objected to the admission of the COGCs on hearsay grounds. Appellants argued that Werwie did not have personal knowledge regarding SGS's quality control tests. The district court overruled the objection. In doing so, the court noted that Werwie "established that he's familiar with the process, that he's been to the factory ten times, that [at] one time he was a product manager, and then, oversaw product managers." J.A. 385.

The business records exception to the prohibition of hearsay evidence requires that the record contain information transmitted by someone with knowledge of its contents. *See* Fed. R. Evid. 803(6). Reliance on information from third parties does not render the business records hearsay exception inapplicable. *See Gen. Ins. Co.*, 886 F.3d at 358. A witness laying the record's foundation "must be able to testify that the record was kept in the course of a regularly conducted business activity and also that it was a regular practice of that business activity to make the record." *Id.* (internal quotation marks omitted). But that witness need not have participated in the creation of the record or have even spoken to the individual who did create the document. *Id.* As detailed above, Werwie's testimony satisfies these requirements.

With that testimony in mind, we conclude it was not arbitrary or irrational for the district court to rule that the COGCs' reliance on information from SGS is consistent with the business records exception to the hearsay rule. *Gen. Ins. Co.*, 886 F.3d at 358 (finding documents that relied on information from third parties admissible under the business records exception where the qualified witness was familiar with the creation of the third-party information and that that information was created in the regular course of business).

4.

Lastly, Appellants argue that the district court abused its discretion by prohibiting the jurors from handling or testing the bike. Federal Rule of Evidence 403 allows a trial court to exclude evidence if its potential to mislead or confuse jurors substantially outweighs its probative value. Here, the district court granted Appellees' motion to exclude in-court testing of the bike primarily because the condition of the bike had changed. On that basis, the court concluded that jurors might be misled regarding the defectiveness of the brake at the time of the accident. Even assuming the maximum probative value and minimum prejudicial effect, the district court's decision not to allow jurors to handle the bike was not arbitrary or irrational. So this court will not upset it.

III.

Appellants next challenge the district court's jury instructions. Specifically, Appellants argue that the district court abused its discretion by giving the jury a spoliation instruction because there was no evidence that a change in the condition of the bike was due to intentional conduct on the part of Appellants. Appellees' motion to

include a spoliation instruction came after the second day of trial, when Appellees' expert "inspect[ed] the bike to assess its current condition" and observed that the brake was more difficult to squeeze at that time than it was at the time of his initial inspection. J.A. 339. Appellees' expert also noticed that the orientation of the handlebars had changed since the time of his initial inspection. At the time of his initial inspection, the bike "[was] in a permanent left-turn position" -- when the handlebars were positioned at a 90 degree angle from the body of the bike, the front wheel was askew at about a 45 degree angle. *Id.* In contrast, on the morning of the second day of trial, the wheel was directly aligned with the body of the bike.

At that point, Appellees raised their concerns regarding the condition of the bike with the district court. Because of the change in the condition of the bike, Appellees asked the court to instruct the jury on spoliation. Specifically, Appellees asked the court to instruct the jury that they should "infer that the position of the front wheel relative to the handlebar was in a condition favorable to the Defendants, and unfavorable to the Plaintiffs" before the change in the bike's condition. J.A. 133 n.9; *see also id.* at 649. The court agreed to give the following spoliation instruction:

> The condition of the front wheel of the bicycle and its position relative to the handlebar has changed between the time defendants' expert inspected the bicycle and today. The bicycle was in the possession of the plaintiffs during that time.
>
> The position of the front wheel relative to the handlebar was evidence material to defendants' expert's opinions in this case . . . . Therefore, you may, but are not required, to infer that the position of the front wheel relative to the handlebar was in

18

> a condition favorable to the defendants, and unfavorable to the plaintiffs before this change.
>
> If you make this inference, you should consider it in light of all of the other evidence offered in the case as you reach your verdict.

*Id*. at 644–45.

## A.

A trial court's decision to instruct the jury on spoliation is reviewed for abuse of discretion. *See Bunn v. Oldendorff Carriers GMBH & Co. KG*, 723 F.3d 454, 468 (4th Cir. 2013) ("[W]e review a trial court's jury instruction for abuse of discretion, keeping in mind that a trial court has broad discretion in framing its instructions to a jury." (internal quotation marks omitted)). Even if the district court included an erroneous instruction, the resulting verdict will not be set aside unless it "*seriously* prejudiced the challenging party's case." *Id.* (emphasis in original) (internal quotation marks omitted).

## B.

Before permitting a jury to draw an adverse inference from the absence, loss, or destruction of evidence, a trial court must find that the evidence at issue was relevant such that it "would naturally have been introduced into evidence" and that the "intentional conduct" of the party in control of the evidence contributed to its loss or destruction. *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155–56 (4th Cir. 1995). To that end, "the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Id.* But "willful conduct" does not necessarily require bad faith. *See Buckley v. Mukasey*,

19

538 F.3d 306, 323 (4th Cir. 2008). Rather, "willful conduct" in this context simply means not accidental. *See Vodusek*, 71 F.3d at 155 (finding a spoliation instruction appropriate where an expert's investigative techniques required damaging relevant evidence).

Considering the evidence that was before the district court at the time the court made its decision on the spoliation instruction, the court reasonably concluded that Appellants' intentional conduct damaged relevant evidence. When weighing the evidence related to the "willful conduct" requirement, the facts before the district court were: (1) the bike was in Appellants' exclusive control; (2) the bike's condition changed in a way that was more favorable to Appellants' theory of what caused the accident; and (3) reorienting the wheel in relation to the handlebars requires an intentional act, like straddling the wheel and turning the handlebars.[7] That Appellants acted willfully in changing the orientation of the bike's handlebars necessarily flows from this set of facts.

Appellants also argue that the district court abused its discretion by instructing the jury on spoliation because Appellees had an opportunity to inspect the bike before the change in its condition. But that argument also fails. In support of this exception to the spoliation rule, Appellants cite several cases that supposedly stand for the proposition

---

[7] Appellees' expert testified that an intentional act was required to change the orientation of the handlebars. Appellants' counsel also stated that he could have changed the orientation of the handlebars by straddling the wheel and turning them. *See* J.A. 641 ("As far as I'm concerned, we can [change the position of the handlebars] right now. I can do it in five seconds. I've done it to my bike many a time . . . . You straddle the wheel, as the witness said, and you turn the handle bars a little bit.").

that, once an opposing party has had an opportunity to inspect the evidence, a change in its condition does not justify a spoliation instruction. But the cases Appellants cite are not analogous to the instant case. In each of those cases, the opposing party was negligent in not inspecting the evidence. *See Pirrello v. Gateway Marina*, No. 08-cv-1798, 2011 WL 4592689, at \*7 (E.D.N.Y. Sept. 30, 2011) (finding a spoliation instruction was not justified because the defendant failed to request that the boatyard holding the boat at issue preserve it); *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (finding the defendant had adequate time to inspect the evidence at issue before it was spoliated but failed to do so); *Gaffield v. Wal-Mart Stores E., LP*, 616 F. Supp. 2d 329, 338 (N.D.N.Y. 2009) (same). That is not the case here.

Appellees did not miss their opportunity to inspect the bike because they were negligent. Indeed, the instruction was not intended to account for Appellees' lack of access to the bike. Rather, the instruction was intended to off-set Appellants' testimony that the condition of the bike had not changed. For these reasons, the district court did not abuse its discretion by instructing the jury on spoliation.

## IV.

Finally, Appellants argue that the district court erred by denying Callahan's motion for entry of judgment pursuant to Federal Rule of Civil Procedure 68. On December 2, 2016, six and half weeks before trial, Appellees made Appellants a Rule 68 offer of judgment. That offer stated:

21

Defendants Toys "R" Us-Delaware, Inc. and Pacific Cycle Inc. (collectively, "Defendants"), by their attorneys, pursuant to Federal Rule of Civil Procedure 68, hereby offer to allow judgment to be taken against them in favor of Virginia Callahan and T. G. ("Plaintiffs") in the amount of $50,000.00, inclusive of all costs, expenses, attorneys' fees, and any other fees accrued through the date of service hereof.

This offer of judgment is offered in full and complete satisfaction of all claims that Plaintiffs have asserted or could have asserted against Defendants in the above-captioned lawsuit. This offer of judgment is not intended to resolve or impact in any way any claims Defendants have or may have against Plaintiffs.

This offer of judgment is not, and is not to be construed as, an admission that Defendants are liable in this action for any claim set forth in Plaintiffs' Complaint.

In accordance with Rule 68, this offer will remain open for fourteen (14) days after the service of this offer upon Plaintiffs. If this offer is not accepted in writing within that fourteen (14) day period, it shall be deemed withdrawn. If any judgment finally obtained by Plaintiffs is not more favorable than the offer contained herein, Defendants will seek from Plaintiffs, in accordance with Rule 68, all of their incurred costs after the date of this offer, including attorneys' fees as and to the extent applicable.

J.A. 110–11.

On December 12, 2016, Callahan wrote to Appellees purporting to accept their offer. However, Callahan noted that Appellees' offer "was not explicitly contingent on both Plaintiffs accepting the offer." J.A. 113. Accordingly, she "accept[ed] the offer of judgment on her own behalf" and not "on behalf of T.G." *Id.* at 114. Significantly, Callahan stated that T.G. would "continue to pursue her claim for personal injuries." *Id.*

22

On December 23, 2016, Appellees rejected Callahan's acceptance. Appellees interpreted Callahan's "acceptance on her own behalf" as a counteroffer. J.A. 115. Specifically, Appellees pointed to language in their original offer of judgment that made the offer "contingent on acceptance by both Plaintiffs." *Id.* Appellees informed Callahan that, because her purported acceptance altered the terms of their offer, it served as a rejection. On January 5, 2017, Callahan reiterated her position that she accepted Appellees' offer.

The parties proceeded to trial 12 days later. During the trial, Callahan pursued the claims she purportedly settled. Six days after the jury reached its verdict in favor of Appellees, Callahan moved for entry of judgment pursuant to the Rule 68 offer of judgment. The court denied Callahan's motion on February 22, 2017. The court reasoned that Callahan's December 12, 2016 letter amounted to a counteroffer.

A.

The district court's decision to deny Callahan's motion for entry of judgment is reviewed de novo: In determining whether a Rule 68 offer of judgment has been offered or accepted, courts apply traditional principles of contract interpretation. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *First Fin. Ins. Co. v. Hammons*, 58 F. App'x 31, 34 (4th Cir. 2003). And a trial court's interpretation of a contract is reviewed de novo. *Sky Angel U.S., LLC v. Discovery Comms., LLC*, 885 F.3d 271, 278 (4th Cir. 2018). Further, to the extent the district court's decision involved an interpretation of Federal Rule of Civil Procedure 68, the de novo standard applies. *See Camacho v. Mancuso*, 53 F.3d 48, 51 (4th Cir. 1995) (reviewing a trial court's interpretation of the

23

scope of a federal rule of civil procedure de novo); *Hammons*, 2003 WL 264700, at *1 (noting that a trial court's interpretation of Federal Rule of Civil Procedure 68 is reviewed de novo).

B.

It is axiomatic that valid acceptance of an offer requires complete acceptance. *See Iselin v. United States*, 271 U.S. 136, 139 (1926) ("It is well settled that a proposal to accept, or an acceptance upon terms varying from those offered, is a rejection of the offer . . . ."). That is to say, an offeree cannot accept the terms of a contract after changing the terms of the contract. *See id.*

Applying traditional principles of contract interpretation, Callahan did not accept Appellees' offer of judgment because her acceptance changed the terms of the offer. Appellees' offer was made in exchange for "full and complete satisfaction of all claims that Plaintiffs have asserted or could have asserted against Defendants in the above-captioned lawsuit." J.A. 110. For that reason, Callahan did not accept the offer by accepting "on her own behalf" while T.G. "continue[d] to pursue her claim for personal injuries." *Id.* at 114. Indeed, Callahan continued to pursue her own claims.

Appellants argue that Callahan had no choice but to accept the offer. Because her damages were limited by statute to medical expenses, the $50,000 satisfied her grievances. For that reason, Appellants assert, Callahan either had to accept the offer or face Rule 68 penalties, which require an offeree who rejects a Rule 68 offer but fails to obtain a judgment more favorable than the offer, to pay the costs incurred after the offer was made. It is unclear whether or not the offer, directed at both Appellants T.G. and

24

Callahan, actually did require Callahan to accept it or face Rule 68 penalties. But regardless, the fact that this was Callahan's state of mind with regard to the offer actually supports the district court's ruling. Callahan's purported acceptance of the offer was not part of a sincere meeting of the minds because it was a perfunctory acceptance made to ensure that Callahan would not face Rule 68 penalties. Callahan's decision to proceed to trial, pursuing the claims she purportedly settled, further supports this interpretation of her "acceptance." Accordingly, the district court correctly denied Callahan's motion for entry of judgment pursuant to Federal Rule of Civil Procedure 68.

V.

For the foregoing reasons, we affirm the district court's evidentiary rulings, jury instructions, and decision to deny Callahan's motion for entry of judgment.

*AFFIRMED*