14-1007-cr
*United States v. D'Agostino*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of January, two thousand sixteen.

Present:
        CHESTER J. STRAUB,
        DEBRA ANN LIVINGSTON,
        DENNY CHIN,
            *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

      v.                                 14-1007-cr

CARMEN D'AGOSTINO,

        *Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellee: | RAJIT S. DOSANJH, Tamara B. Thomson, Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, N.Y. |
| For Defendant-Appellant: | JILLIAN S. HARRINGTON, Monroe Township, N.J. |

**UPON DUE CONSIDERATION WHEREOF** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment imposed by the district court is **AFFIRMED**.

Defendant-Appellant Carmen D'Agostino ("D'Agostino") appeals from a judgment of the United States District Court for the Northern District of New York (Mordue, *J.*), entered May 26, 2014, convicting him, after a jury trial, of five counts of filing false income tax returns, in violation of 26 U.S.C. § 7206(1), and sentencing him principally to 21 months' imprisonment followed by one year's supervised release. We assume the parties' familiarity with the issues on appeal and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

**I.  Sufficiency of the Evidence**

D'Agostino first argues that the evidence at trial was insufficient to support the *mens rea* element of the offense of filing false income tax returns. This element requires the Government to prove beyond a reasonable doubt "that the defendant signed the return willfully and knowing it was false." *United States v. LaSpina*, 299 F.3d 165, 179 (2d Cir. 2002) (quoting *United States v. Pirro*, 212 F.3d 86, 89 (2d Cir. 2000)). "[C]arrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." *Cheek v. United States*, 498 U.S. 192, 202 (1991). Ultimately, "the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission . . . ." *Id.*

Typically, "[w]e review *de novo* a challenge to the sufficiency of the evidence and 'affirm if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt.'" *United States v. Yannotti*, 541 F.3d 112, 120 (2d Cir. 2008) (quoting *United States v. Geibel*, 369 F.3d 682, 689 (2d Cir. 2004)). But where, as here, a defendant challenges the sufficiency of the evidence for the first time on appeal, we review the unpreserved claim for plain error only. *See United States v. Allen*, 127 F.3d 260, 264 (2d Cir. 1997).

In his tax returns for tax year 2004 through tax year 2010, D'Agostino failed to declare any earnings that he received from his trucking business, when he in fact received tens of thousands of dollars from his trucking business each of those tax years. According to D'Agostino, he did not declare these earnings because he did not believe that such private earnings "constituted gains, profits or income within the meaning of the relevant law." Gov't App. 38. The evidence at trial showed, however, that D'Agostino had paid taxes in connection with similar earnings in prior years. Moreover, the Internal Revenue Service ("IRS") repeatedly sent D'Agostino: letters informing him that his new position "ha[d] no basis in law," Gov't App. 74; notices stating that the information D'Agostino reported on his tax return did not match the information the IRS had on file; and publications explaining the truth behind frivolous tax arguments commonly advanced by tax protestors. On several occasions, the IRS followed up these mail communications with telephone calls.

The jury convicted D'Agostino of filing false income tax returns in each of the 2006 and 2010 tax years. We identify no inadequacy, let alone insufficiency amounting to plain error, in the evidence adduced at trial in support of these convictions. There was more than sufficient evidence for a rational factfinder to conclude that D'Agostino was fully aware of his legal

3

obligation to pay taxes on the earnings from his trucking business and that he knowingly failed to meet that obligation, in the face of repeated notifications by the IRS that his argument to the contrary was without legal basis. A jury thus could have reasonably concluded that his omission was not a good-faith misunderstanding. Accordingly, we reject D'Agostino's challenge to the sufficiency of the evidence.

## II. Jury Instructions

D'Agostino next challenges the district court's jury instructions on his good faith defense. Typically, we review a district court's jury instruction *de novo*. *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015). Under that standard, "[a] defendant challenging a jury instruction must demonstrate that he requested a charge that 'accurately represented the law in every respect' and that the charge delivered was erroneous and prejudicial." *Id.* (quoting *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* (quoting *United States v. Naiman*, 211 F.3d 40, 51 (2d Cir. 2000)). But where, as here, a defendant fails timely to object to a jury instruction, we review the instruction for plain error. *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir.), *cert. denied*, 134 S. Ct. 309 (2013).

The jury instructions delivered by the district court made clear that willfulness was an element of the offense for which D'Agostino was charged, and that "conduct [is] not 'willful' if it was due to negligence, inadvertence, or mistake or was the result of a good faith misunderstanding." Trial Tr. 733. D'Agostino argues that these instructions were too "basic," and provided only "minimal elaboration" as to how a jury is to make a determination of a good-faith misunderstanding. Appellant Br. 44. But a jury instruction on willfulness in criminal tax cases need not describe the contours of the good faith defense in exhaustive detail.

4

Indeed, such an instruction need not reference the good faith defense at all: we have stated that even a "standard jury instruction on the willfulness element of tax evasion generally encompasses a good faith defense." *United States v. McGinn*, 787 F.3d 116, 126 (2d Cir. 2015). Although we have previously held that "where [defendants] were charged with sixty-four counts covering the waterfront of tax fraud, securities fraud, mail and wire fraud, conspiracy, and RICO, a generalized charge on good faith was insufficient to instruct the jury concerning [defendants'] specific good faith defense," *United States v. Regan*, 937 F.2d 823, 826–27 (2d Cir. 1991), we have emphasized that *Regan*'s reasoning applied specifically "in the circumstances of *that* complex case," *United States v. Evangelista*, 122 F.3d 112, 118 n.6 (2d Cir. 1997), circumstances that plainly do not exist here. By explaining that a good-faith misunderstanding negates willfulness, an essential element of the offense, the jury instructions here left no room for doubt that a finding of a good-faith misunderstanding on the part of D'Agostino would preclude conviction. The district court's jury instructions were thus wholly proper.

### III. Ineffective Assistance of Counsel

D'Agostino also argues that he was denied constitutionally effective counsel when his trial counsel failed to insist on expanded jury instructions on the good faith defense and, relatedly, failed to object to the jury instructions the district court ultimately adopted regarding the good faith defense. To establish a claim of ineffective assistance, a defendant must show "(1) that counsel's performance was so unreasonable under prevailing professional norms that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment,' and (2) that counsel's ineffectiveness prejudiced the defendant such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

5

would have been different.'" *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)).

D'Agostino's claim fails under the first prong of the familiar *Strickland* inquiry. According to D'Agostino, the good faith defense was so critical to his defense that trial counsel's failure to ask for more thorough jury instructions on the good faith defense, or to object to the district court's delivered jury instructions on the good faith defense, was unreasonable under prevailing professional norms. But since the district court's jury instructions regarding the good faith defense were perfectly adequate, trial counsel could not have fallen below "an objective standard of reasonableness" by failing either to object to them or to insist on more thorough instructions. *Strickland*, 466 U.S. at 688. Accordingly, we reject D'Agostino's claim of ineffective assistance of counsel.

**IV.    Motion to Strike Evidence**

Finally, D'Agostino challenges the district court's denial of his motion to strike certain Government exhibits admitted into evidence: IRS account transcripts, for each tax year from 2000 through 2010, containing information that is related to D'Agostino's tax filings for that year and stored in an electronic "individual master file" ("IMF") database.

Under Fed. R. Evid. 103(a)(1), a party must "timely object[] or move[] to strike" an item of evidence in order to preserve a claim of evidentiary error on appeal. We review adequately preserved claims of evidentiary error for "abuse of discretion, reversing only if we find 'manifest error.'" *United States v. Miller*, 626 F.3d 682, 688 (2d Cir. 2010) (quoting *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010)). Where a party fails timely to object or move to strike, however, we review the party's evidentiary challenge on appeal for plain error. *See United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999). We need not decide whether

D'Agostino's motion to strike was timely, for we conclude that D'Agostino's evidentiary challenge fails under either standard of review.

Assuming *arguendo* that the account transcripts contain hearsay, the district court properly admitted them under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). "A business record may include data stored electronically . . . and later printed out . . . so long as the 'original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice.'" *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) (quoting *United States v. Hernandez*, 913 F.2d 1506, 1512–13 (10th Cir. 1990)). D'Agostino contends that the account transcripts cannot qualify under the business records exception because they were prepared specifically for litigation, but this argument misconceives the nature of the information contained in the account transcripts. It is true that an IRS custodian of records, Paul Crowley ("Crowley"), printed out the account transcripts a few weeks before trial commenced. But the account transcripts merely decode information that IRS agents previously entered into D'Agostino's IMF file. Thus, Crowley did not himself produce any of the statements contained in the account transcripts, and the IRS agents who arguably did produce the statements (by entering certain codes into D'Agostino's IMF file) did so "at or near the time of the occurrence[s] . . . reflected" in the account transcripts in line with the routine recordkeeping practices of the IRS. Trial Tr. 76. That Crowley's act of printing out the account transcripts automatically translated the numerical codes contained in the IMF database into the words represented by those codes does not transform the account transcripts into documents specifically prepared for litigation. All other elements of the business records exception having been met, the district court neither abused its discretion, nor plainly erred, in admitting the account transcripts into evidence.

7

We have considered D'Agostino's remaining arguments and find them to be without merit.   For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

                                                    FOR THE COURT:
                                                    Catherine O'Hagan Wolfe, Clerk