22-250 (L)
USA v. Conde

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2023

(Argued:  January 12, 2024                    Decided:  April 11, 2025)

Docket Nos. 22-250 (L), 22-347 (Con)

_____

UNITED STATES OF AMERICA,

*Appellee*,

- v. -

SALIFOU CONDE,

*Defendant-Appellant.*[*]

_____

Before: KEARSE, LYNCH, and NARDINI, *Circuit Judges*.

---

[*]     The Clerk of Court is instructed to amend the official caption to conform with the above.

Appeal from an amended judgment entered in the United States District Court for the Southern District of New York following a jury trial before Valerie E. Caproni, *Judge*, convicting defendant of wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy to commit both frauds in violation of 18 U.S.C. § 1349; and sentencing him principally to 55 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, defendant contends that an electronically generated record from a telecommunication company's database, showing that certain bank accounts (which had been used in the fraudulent schemes) were used to pay charges for cable and internet service on an account in defendant's name and address, was not properly admitted at trial as a self-authenticating business record, *see* Fed. R. Evid. 803(6) and 902(11), and that its admission thus violated his Sixth Amendment right of confrontation. We find no error or abuse of discretion in the admission of the evidence.

Affirmed.

DANIELLE KUDLA, Assistant United States Attorney,
New York, New York (Damian Williams, United
States Attorney for the Southern District of New
York, Elizabeth A. Espinosa, Olga I. Zverovich,

Assistant United States Attorneys, New York, New York, on the brief), *for Appellee*.

DONALD J. YANNELLA III, New York, New York (Donald Yannella, New York, New York, on the brief), *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Defendant Salifou Conde appeals from an amended judgment entered in the United States District Court for the Southern District of New York following a jury trial before Valerie E. Caproni, *Judge*, convicting him of wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy to commit both frauds in violation of 18 U.S.C. § 1349; and sentencing him principally to 55 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, Conde contends that an electronically generated record from a telecommunication company's database, showing that certain bank accounts (which had been used in the fraudulent schemes) were used to pay charges for cable and internet service on an account in his name and address, was not properly admitted at trial as a self-authenticating business record under Federal Rules of Evidence ("Evidence Rules" or "Rules") 803(6) and 902(11), and

that its admission thus violated his Sixth Amendment right of confrontation. Finding no error or abuse of discretion in the admission of the evidence, we affirm.

## I. BACKGROUND

This case has its origin in thefts from a program of New York City's Human Resources Administration ("HRA") that provides financial assistance to certain qualifying individuals. To defray the cost of those persons' rent, HRA each month mailed rent assistance checks ("HRA rent checks") to qualifying individuals' landlords. If such mail was not deliverable to the addressee (which was a frequent occurrence in 2016-2019) the Postal Service returned it to HRA's post office box ("HRA P.O. Box"). HRA retained a private courier company, Deluxe Delivery Systems, to retrieve the contents of the HRA P.O. Box and bring them to HRA's office. From at least August 2016 through August 2019, more than 100,000 HRA rent checks each year--*i.e.*, approximately 300-400 a day--were returned to the HRA office as undeliverable.

During the relevant period, Conde and codefendant Issiaga Sylla were employed by Deluxe Delivery Systems as couriers and were responsible for

collecting mail from the HRA P.O. Box and delivering it to HRA's office. At some point it was noticed that some HRA rent checks had been fraudulently deposited in bank accounts not belonging to the named payee ("misappropriated HRA checks" or "misappropriated checks"). Conde and several alleged coconspirators were arrested and indicted; Conde was charged in the three substantive or conspiracy bank and wire fraud counts indicated above. The trial evidence supporting Conde's convictions on those counts--the sufficiency of which is not challenged--included the following.

The government witnesses included bank officers who described records created and maintained by their banks and the banks' automated teller machines ("ATMs"). At an ATM, a customer can withdraw cash, or can deposit a check (imaged by the ATM) or cash. Transactions are automatically recorded by the ATM and are numbered in sequence as they occur at the machine. The ATM creates a record that, in addition to the transaction sequence number, shows the ATM's location, the date and time of the transaction, the amount and type of transaction, the number of the account for the deposit or withdrawal, and, for the deposit of a check, an image of the check. In addition, ATM surveillance cameras take video footage and still photographs of customers engaged in transactions,

showing, *inter alia*, the date, time, and ATM location. The bank retains among its records the ATM videos and photographs, as well as the above ATM information as to the date, time, type, account, sequence number, and amount of the transactions.

A banking customer receives a monthly statement, which shows transactions for the account by means of, *inter alia*, check, credit card, or debit card, including the date or dates the transaction occurred and/or is posted to the account. The statement also shows the customer's transactions, if any, made at the bank's ATMs using an ATM card or a debit card.

The government introduced evidence of a Chase Bank checking account in Conde's name, with his home address, date of birth, and social security number; and it introduced evidence of many misappropriated HRA checks that were deposited in, and of subsequent cash withdrawals from, that account. Monthly statements for Conde's account showed that the misappropriated checks had been deposited at ATMs; and numerous photographs or videos, taken by ATM surveillance cameras, showed Conde engaging in transactions at those ATMs.

The government also introduced a record from internet service/cable provider "Optimum d/b/a Altice USA ('Optimum')" showing three credit-card

payments to Optimum for an account in Conde's name and address (the "Optimum Payment Record" or "Optimum Record"). Bank statements, ATM records, and/or images of the checks showed that those three credit cards were linked to bank accounts--in names other than Conde's--into which misappropriated HRA checks had been deposited (*see, e.g.*, Conde brief on appeal at 9 ("The [Optimum] records . . . showed that the proceeds of fraudulently deposited HRA checks were used to pay for internet and cable service in appellant's name.")). The Optimum Payment Record--as discussed in Part II below--was admitted in evidence, over Conde's objection, as a self-authenticating business record.

Conde was convicted on all three of the counts against him.

## II. DISCUSSION

On appeal, Conde challenges only the admission at trial of the Optimum Payment Record. He contends principally that the Optimum Record was improperly admitted as a business record under Rule 803(6) and that the certification proffered to authenticate it as a business record was deficient. He also argues that because the Optimum Record was not a business record, its admission

violated his rights under the Confrontation Clause of the Sixth Amendment to the Constitution. Finding no error in the admission of the Optimum Record as a Rule 803(6) business record, we reject both his procedural and his constitutional contentions.

A. *Pretrial Ruling on Admissibility of the Optimum Payment Record*

Prior to trial, the government moved for an *in limine* ruling that the Optimum Payment Record would be admissible at trial under the business-records exception to the rule against hearsay, *see* Fed. R. Evid. 803(6), and that it could be authenticated by a custodian's written certification instead of live testimony, *see* Fed. R. Evid. 902(11). As described below, Conde posed several objections, which were largely overruled following a hearing on the motion.

At the hearing, the government explained that the proffered Optimum Record was part of Optimum's response to a government subpoena that had requested information identifying customers associated with five specific credit-card payments. Three were specific dollar amounts that had been paid on three specified dates in 2018, each with a different credit card; the other two were

specific dollar amounts, on specified dates in 2016 and 2017, both paid with a fourth credit card.

Optimum's response to the subpoena was a one-page document that displayed two charts. In the chart at the top of the page, the right side set out the three 2018 dates, amounts, and credit card numbers that were in the government subpoena; in the left side of the chart, Optimum provided the Optimum customer number, address, and the name "Salifou Conde"--*i.e.*, the information requested as to the 2018 payments.

Below that responsive information, a second chart reflected the details provided by the government subpoena as to the fourth credit card that had supposedly been used to make the listed payments on the stated dates in 2016 and 2017. Beneath this chart, Optimum's response was, "Unable to identify sub[s]criber based on the above payment information." (A.836.)

The government sought to offer in evidence as the Optimum business record only the top chart, not "'the stuff at the bottom.'" (A.114.) With its *in limine* motion, the government submitted the certification that had accompanied the Optimum response to the subpoena, which was the sworn declaration under penalty of perjury by a person "acting on behalf of the Custodian of Records for

CSC Holdings, LLC ('Altice USA')" as "authorized to submit this declaration on behalf of Altice USA." (Altice Custodian Declaration, June 11, 2021, at ¶ 1.) The certification, "pursuant to the Federal Rules of Evidence Rules 803(6) and 902(11) and in response to the legal process dated Oct 31 2018," stated in pertinent part as follows:

> 2. The documents attached hereto are true and correct copies of Altice USA records that were made at or near the time of occurrence by or from information transmitted by a person with knowledge of these matters.

> 3. The documents attached hereto were kept in the ordinary course of Altice USA's business and made by regularly conducted activity as a regular practice of Altice USA's business.

(Altice Custodian Declaration ¶¶ 1-3.)

In opposition to the government's motion, Conde made several arguments. He argued (1) that the document furnished by Optimum did not qualify as a Rule 803(6) business record because (a) it was a single-page summary that did not include original billing and payment records kept in the ordinary course of business; (b) it was a compilation of data, rather than a record, and its statement that Optimum could not identify a customer associated with two of the payments listed in the subpoena indicated that it was not the regular practice of

Optimum to make such a data compilation; and (c) it was thus merely a document created in response to a government inquiry in preparation for litigation; (2) that Optimum's inability to connect some of the payments to any Optimum account indicated a lack of trustworthiness; and (3) that the requirements of Rule 902(11) for the admission of a record as self-authenticating, *i.e.*, without need for the custodian to testify in court, were not met because the Altice Custodian Declaration did not address how or when the requested information had been retrieved from Optimum's database.

The district court, after hearing argument, ruled that the Optimum Payment Record, identifying Conde as the customer for whom the three 2018 payments were made, was admissible under Rule 803(6) and would be admitted as a self-authenticating business record. The court found no basis to doubt that Optimum regularly made and maintained contemporaneous records as to what payments it received for what customer accounts. It also reasoned that Optimum's inability--as stated at the bottom of the document--to find customer data matching the 2016 and 2017 credit card payments described in the government subpoena did not undercut the reliability of the data that Optimum had in its records linking the three 2018 payments with the account of Conde.

Initially, having noted that the government was offering in evidence only so much of the Optimum response as furnished data--*i.e.*, the top chart--the court stated that it would redact the bottom chart. Conde, however, having been denied his request for exclusion of the entire Optimum document, changed course and urged the court to admit the bottom chart as well, rather than redacting it, so that he could use it to pursue his argument as to unreliability. The court granted that request. Thus, Optimum's entire one-page response to the government's subpoena was admitted in evidence--the top chart as a business record offered by the government, and the bottom chart at the request of Conde. The Altice Custodian Declaration pursuant to Rule 902(11) was not part of the evidence at trial.

B. *The Appeal*

On appeal, Conde pursues his challenges to the admission of the Optimum Payment Record under Rule 803(6), arguing principally (1) that the Optimum Record is not a business record--and that the custodian's declaration was insufficient to authenticate it as such--because there is no showing of or reference to any underlying billing or payment document; (2) that the very fact that

- 12 -

Optimum stated it was unable to match the 2016 and 2017 payments shown in the bottom chart showed both (a) that the information supplied in response to the government subpoena was not a record made or maintained in the ordinary course of Optimum's business, and (b) that the identification of Conde as the customer in the 2018 transactions was unreliable; and (3) that the Optimum response should be excluded as a document that had simply been prepared for litigation.

We review a district court's decision to admit a document under the business-records exception for abuse of discretion, *see, e.g., Abascal v. Fleckenstein*, 820 F.3d 561, 564-66 (2d Cir. 2016), a standard that allows reversal for an error of law or a clear error of fact, *see, e.g., Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) ("*Potamkin*"), or for a "'decision that cannot be located within the range of permissible decisions[,]' *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)," *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) ("*Komasa*"), *cert. denied*, 575 U.S. 925 (2015).

We see no such error in the decision of the district court to admit the Optimum Payment Record as a business record in this case. We reject Conde's challenges for the reasons discussed below.

1. *The Rule 803(6) Business-Records Exception, and the Concept of "Records" in the Electronic Era*

Although hearsay evidence is generally not admissible, Rule 803(6) makes a business-records exception for

[a] record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Rule 902(11), referred to in Rule 803(6)(D), provides, as relevant here, that "[t]he original or a copy of a domestic record *that meets the requirements of Rule*

- 14 -

*803(6)(A)-(C)*, as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court," is "self-authenticating," meaning that it "*require[s] no extrinsic evidence of authenticity in order to be admitted.*" Fed. R. Evid. 902(11) (emphases added). Accordingly, Rules 803(6) and 902(11) create a framework for the authentication and admission of business records "'without the expense and inconvenience of producing time-consuming foundation witnesses.'" *Komasa*, 767 F.3d at 155 (quoting Fed. R. Evid. 803 Advisory Committee Note (2000)). "'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *Komasa*, 767 F.3d at 156 (quoting *Phoenix Associates III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995)).

Conde argues that the Optimum Payment Record does not reflect actual business records and that the custodian's declaration is deficient because neither refers to any underlying billing or payment documents. (*See, e.g.,* Transcript of Oral Argument on Appeal, January 12, 2024 ("Appeal Oral Arg. Tr."), at 6 ("original payment documents . . . might have met the [Rule 803(6)] prerequisites"); Conde brief on appeal at 10 ("[t]he one-page Optimum payment record did not say who had culled the data or produced the document").) This

- 15 -

contention is foreclosed by Rules 803(6) and 902(11). The Altice custodian's sworn declaration certified that the Optimum records, reflecting that the three 2018 payments listed in the government subpoena were made for service to an account in the name of Conde (at Conde's home address), had been created and maintained in the regular course of Optimum's business. Under Rules 803(6) and 902(11), this certification obviated presentation of or reference to the extrinsic evidence demanded by Conde, *i.e.*, original documents or the names of employees involved in Optimum's creation and retention of records of the customers for its services.

Conde also insisted at oral argument of this appeal that there cannot be a "record" within the meaning of Rule 803(6) where there did not exist an underlying paper document. For example, in response to a question from the bench hypothesizing a transaction in which "there never was a paper" but only "electronic records" (Appeal Oral Arg. Tr. 6-7), Conde's contention was that "those . . . don't come under" Rule 803(6) (*id*. at 7; *see id*. at 10 ("If there are no underlying documents, then I would argue that it is not a record.").) This contention too is meritless, given the stated goals of having Evidence Rules and Federal Rules of Civil Procedure ("Civil Procedure Rules") that "ke[ep] pace with changes in information technology," Fed. R. Civ. P. 34 Advisory Committee Note (2006).

The Evidence Rules define "'record'" as "includ[ing] a memorandum, report, or data compilation," Fed. R. Evid. 101(b)(4), and state that "a reference to any kind of written material *or any other medium includes electronically stored information*," *id*. Rule 101(b)(6) (emphasis added).  Advisory Committee Notes on Rule 101 point out that "[t]he reference to electronically stored information is intended to track the language of Fed. R. Civ. P. 34," Fed. R. Evid. 101 Advisory Committee Note (2011); and for more than a half-century, Civil Procedure Rule 34 has used an "inclusive description of 'documents'" in order "to accord with changing technology" and "make[] clear that" Rule 34 discovery principles governing "documents" also "appl[y] to electronics data compilations."  Fed. R. Civ. P. 34 Advisory Committee Note (1970); *see also* Fed. R. Civ. P. 34 Advisory Committee Note (2006) ("[I]t has become increasingly difficult to say that all forms of electronically stored information, many dynamic in nature, fit within the traditional concept of a 'document.'  Electronically stored information may exist in dynamic databases and other forms far different from fixed expression on paper.").

For like reasons, the term "record" in Evidence Rule 803(6) has always included data stored electronically:

> The form which the "record" may assume under [Rule 803(6)] is described broadly as a "memorandum, report, record, or data compilation, in any form." *The expression "data compilation" is used as broadly descriptive of any means of storing information other than the conventional words and figures in written or documentary form. It includes*, but is by no means limited to, *electronic computer storage*.

Fed. R. Evid. 803 Advisory Committee Note (1972) (quoting 1972 Proposed Rule 803(6) (emphases ours)); *see also* Fed. R. Evid. 101 and 803 Advisory Committee Notes (2011) (the expansion in 2011 of Rule 101's definition of "record" to include "data compilation[s]" obviated such a definition in Rule 803(6), the 2011 changes to which were stylistic, not substantive).

Nothing in these provisions--which expressly envision the recording and maintenance of information in electronic form-- requires that such information have originally been communicated on paper. If it was the regular practice of a business to have someone with knowledge make note electronically of an electronic communication, and to store and maintain that information electronically, the datum thus maintained qualifies as a "record" within the meaning of Rules 101(b)(4) and 803(6), even if there were no "conventional words and figures" written on paper.

2. *The Purpose of the Record*

Conde also argues that the fact that the Optimum Payment Record was prepared shortly before trial and in response to a subpoena, as well as the fact that Optimum responded that it could not find a match for the 2016 and 2017 transactions, showed that the Optimum Payment Record did not qualify as a business record within the scope of Rule 803(6) because it was in fact a document prepared in anticipation of litigation. (*See* Conde brief on appeal at 7, 11.) Again we disagree.

The temporal focus for assessment of whether records meet the Rule 803(6) conditions is the time at which the data were recorded, rather than the time at which they were retrieved or printed. *See, e.g., Potamkin*, 38 F.3d at 632-33; *see generally* 2 *McCormick on Evidence* § 294 (9th ed. 2025 update) ("the timeliness of the creation of the record . . . refers to when the entry into the data bank was originally made, not the time the printout was produced"). This is particularly so in the many instances in which electronically stored information would be unintelligible without a decoded printout. *See, e.g.*, Fed. R. Civ. P. 34 Advisory Committee Note (1970) (noting that, as a practical matter, when electronically stored data can be used by a discovering party only through devices that will translate the data into

usable form, the "respond[ing party] will have to supply a print-out"). Thus, if the criteria in Rule 803(6)(A)-(C) with regard to timing and regularity of creation and maintenance of computerized business data are satisfied, the fact that such data are retrieved subsequently in response to a subpoena or for other use in litigation does not remove them from the scope of Rule 803(6). *See*, *e.g.*, *United States v. D'Agostino*, 638 F. App'x 51, 55 (2d Cir.) (custodian's act, "a few weeks before trial commenced," of "printing out the account transcripts [which] automatically translated the numerical codes contained in" the "electronic . . . file,"--*i.e.*, "merely decode[d] information that IRS agents previously entered into" the defendant's file "at or near the time of the occurrence[s] . . . in line with the routine recordkeeping practices of the IRS"--did "not transform the account transcripts into documents specifically prepared for litigation" (internal quotation marks omitted)), *cert. denied*, 578 U.S. 950 (2016).

*Accord United States v. Burgos-Montes*, 786 F.3d 92, 119 (1st Cir.) ("exhibits showing selected data pulled from records that a company keeps in the ordinary course of business fall under the business records exception, even if the physical exhibits themselves were made to comply with a request from law enforcement"), *cert. denied*, 577 U.S. 1036 (2015); *United States v. Battles*, 514 F. App'x

- 20 -

242, 249 (3d Cir. 2013) ("document [that] reported the results of a query in a database maintained" by a bank "in the ordinary course of business" was a business record under Rule 803(6), even though "the spreadsheet excerpt was created for the purpose of litigation"); *General Insurance Co. of America v. United States Fire Insurance Co.*, 886 F.3d 346, 359 (4th Cir. 2018), *as amended* (Mar. 28, 2018) (printouts reflecting queries of an electronic database meeting the criteria of Rule 803(6), even if "they were created in the course of litigation," are Rule 803(6) business records); *United States v. Loney*, 959 F.2d 1332, 1340-41 (5th Cir. 1992) (if the underlying data were recorded and maintained in accordance with the Rule 803(6) criteria, a proffered summary of the data, created by "asking that the computer find accounts" matching certain criteria, may be admissible even if the summary itself was not so created or maintained); *United States v. Nixon*, 694 F.3d 623, 633-35 (6th Cir. 2012) ("*Nixon*") (spreadsheet created using "database-querying software" in response to a subpoena met the criteria for business records exception); *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002) (airline "[c]omputer data" as to check-in records for certain names--produced at the request of the government--"compiled and presented in computer printouts prepared specifically for trial" are business records "under Rule 803(6), even

- 21 -

though the *printouts* themselves are not kept in the ordinary course of business" (emphasis in original)); *United States v. Keck*, 643 F.3d 789, 796-97 (10th Cir. 2011) ("In the context of electronically-stored data, the business record" that was "created for the administration of [the business]'s affairs" "is the datum itself, not the format in which it is printed out for trial or other purposes.").

In sum, searching the database for data does not change the nature of stored data; and "the simple act of printing out the electronically stored records does not change their status for [Rule 803(6)] admissibility." *Nixon*, 694 F.3d at 635.

3. *Reliability*

"The principal precondition to admission of documents as business records pursuant to Fed.R.Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Saks International, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987). Conde continues to argue on appeal that, in light of Optimum's statement that it could not find a customer match for the 2016 and 2017 transactions specified in the government's subpoena, Optimum's response that he was the customer in the specified 2018 transactions was unreliable. We disagree.

The district court inferred that Optimum's database had been queried for customer information with respect to the 2018 transactions by reference to the specified credit card numbers and amounts, and that that inquiry had generated the customer information in the name, address, and customer number of Conde. While Conde challenged that inference because of the statement that Optimum appended to the bottom chart--"Unable to identify sub[s]criber based on the above payment information"--as he argued that "no one could have had the duty to write down: *We don't know what we are going to attribute these payments to, we don't know whose account we are going to credit*" (A.117), the district court appropriately found that argument unpersuasive.

To begin with, it is plain that the reason the bottom chart appeared on the Optimum document at all was that Optimum was responding to the subpoena from the government and was explaining why it was providing information for only three of the five transactions queried. The court permissibly found that the fact that Optimum had not been able to find a match for two 2016-2017 transactions was insufficient to cast doubt on the reliability of the computer's generation of a name, address, and customer number with respect to the 2018 transactions.

Further, there was no dispute that the amounts, the 2016 and 2017 dates, and the credit card number in the bottom chart were numbers that the government set out in its subpoena. (*See, e.g.*, A.103-04 (Conde memorandum in opposition to the government's *in limine* motion); A.112-14 (government's statement at oral argument of the motion)). As the court noted, "there could be lots of explanations" for the computer's not finding a match on the earlier transactions, including a simple "mistake in the credit card number." (A.119.) Indeed, assuming that the computer searched for a match not only of the credit card number but also the dates and dollar amounts of the 2016 and 2017 transactions, any of more than a dozen possible errors in inputting a number could have caused the computer search to come up empty.

In sum, the district court did not err or abuse its discretion in crediting the Altice custodian's certification, and in concluding that Conde had shown no reasonable basis on which to find that Optimum did not regularly make and maintain contemporaneous records as to the dates and amounts of payments it was receiving for the services it was providing. We see no abuse of discretion in the decision to admit the Optimum Payment Record, showing that Conde was the recipient of the services referred to in the 2018 transactions, as a business record

under Rule 803(6) at trial. Its admission thus could not have violated his Sixth Amendment right of confrontation. *See United States v. Feliz*, 467 F.3d 227, 231-33, 236 (2d Cir. 2006) ("where a statement is properly determined to be a business record as defined by Fed. R. Evid. 803(6), it is not testimonial" and therefore "the Confrontation Clause simply has no application").

Finally, to the extent that Conde also argues that receiving in evidence the bottom chart in the Optimum response may have unfairly allowed the jury to infer that Conde was profiting from the misappropriated HRA checks in 2016 and 2017 as well as 2018, the onus for that possibility lies only upon Conde himself. The government did not offer the bottom chart in evidence (*see* A.119); and the district court stated that it would thus redact that part of the document (*see id.*). It was only at the subsequent request of Conde that the court changed its initial decision to redact. (*See id.* at 121-22.) Conde is not entitled to relief for a supposed "error" that he invited. *See generally United States v. Young*, 745 F.2d 733, 752 (2d Cir. 1984) (not even the plain error doctrine allowed reversal for an "error" that the appellant "invited" (internal quotation marks omitted)), *cert. denied*, 470 U.S. 1084 (1985).

## CONCLUSION

We have considered all of Conde's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.